EDNA SMITH *vs.* ERVINE JALBERT & another
(and three companion cases).

Hampden.    November 1, 1966. — December 2, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
SPIEGEL, & REARDON, JJ.

*Animal. Practice, Civil,* Exceptions: what questions open. *Real Property,* License, Animal.

Evidence that a zebra seen running loose about one-half mile from the premises of an exposition was later captured and returned to such premises warranted a finding that the zebra was owned by one admittedly the owner of a zebra kept on such premises.    [435]

---

The owner or keeper of a wild animal is strictly liable for personal injuries and property damage caused by the animal irrespective of a previously appearing vicious disposition of the animal and irrespective of the care exercised by the owner or keeper to prevent the animal from doing harm.   [435]

Where, in actions for personal injuries and property damage, there were verdicts for the plaintiffs in substantial amounts and the defendants presented bills of exceptions directed exclusively to questions of liability without raising any issue of damages, the defendants could not prevail in a contention before this court that the plaintiffs were barred of recovery on the ground that proof of actual personal injuries and property damage was essential to recovery and the bills of exceptions revealed no such proof.   [436]

Evidence warranted a finding that the "manager" "in charge of" and "totally responsible for" an animal show on the premises of an exposition was the keeper of a zebra which escaped from the premises and was later captured and returned thereto after causing personal injuries and property damage.   [436–437]

The owner of "Exposition Grounds," actively conducting thereon the business of the exposition, a part of which was an animal show carried on by a licensee of the owner pursuant to a licensing agreement between them whereby the show was subject to the owner's rules and regulations and the licensee paid the owner a percentage of gross admissions and .guaranteed a minimum amount, was subject to the same strict liability as were the licensee and the manager in charge of the show for personal injuries and property damage caused by one of the wild animals of the show after it had escaped from the "Grounds."   [437–438]


FOUR ACTIONS OF TORT.   Writs in the Superior Court dated September 22, 1960, and October 19, 1961.

The actions were tried before *Tomasello, J.*

The cases were submitted on briefs.

*John F. Sullivan & George W. Leary* for Edna Smith & another.

*Mack M. Roberts* for Ervine Jalbert & another.

*Samuel A. Marsella* for Eastern States Exposition.

SPALDING, J.   These are four actions of tort (tried together) to recover for personal injuries and property damage alleged to have been caused by a zebra which was running at large on the streets of West Springfield on September 16, 1960.   The plaintiff Edna Smith brought two actions for personal injuries, one against Eastern States Exposition (Eastern), and the other against Ervine Jalbert

and Animal Fair, Inc. (Animal Fair).[1]   The plaintiff John
H. Breck, Inc. (Breck) brought two actions for property
damage, one against Eastern, and the other against Jalbert
and Animal Fair.[1]   Verdicts were returned for the plain-
tiffs in all the cases and the cases come here on exceptions
of all the defendants.   Each defendant excepted to the
denial of motions for directed verdicts, to the refusal to
give certain instructions, and to the refusal to correct cer-
tain instructions.[2]

There was evidence of the following: Eastern is a corpo-
ration and the owner of premises known as Exposition
Grounds which are located on Memorial Avenue in the town
of West Springfield.   On the morning of September 16,
1960, one McCarthy, a member of the West Springfield
police force, observed a zebra running in a westerly direc-
tion on Memorial Avenue.   The distance from where he
first saw the zebra to the nearest entrance to the Exposition
Grounds was less than a half a mile.   Officer McCarthy pur-
sued the zebra down Memorial Avenue to Lowell Street, at
which point the zebra turned down on Lowell Street and
entered the property of the plaintiff Breck through an open
gate.   The zebra then entered the "plant through the rear
door."   "There was no head halter or other apparatus on
the zebra which would permit anybody to hold him."   Of-
ficer McCarthy heard hollering inside the plant and entered.
After a few minutes he succeeded in putting a rope on the
zebra, which was then removed from the building and tied
to a telephone pole.   At that time the zebra's mouth was
bleeding.   Shortly thereafter the zebra broke away but still
remained on Breck's grounds because the gates were closed.
Further movements of the zebra were restrained by means
of an improvised fence consisting of fifty-gallon drums.
Dr. Evans, a veterinarian, gave the zebra a "tranquilizer

---

[1] Palace Amusement Corp. was originally a third defendant, but a verdict
was directed in its favor without exception.

[2] The defendants Jalbert and Animal Fair also excepted to the admission of
certain evidence and to the denial of their motions for a mistrial based on the
admission of this evidence.   But these exceptions, not having been argued, will
not be dealt with.   Rule 13 of the Rules for the Regulation of Practice before
the Full Court, 345 Mass. 787.

shot,'' after which it was put in a crate and returned by truck to the Exposition Grounds. Before receiving the shot the zebra was ''very jumpy and running a great deal and every once in a while would kick like a mule.'' Upon first observing the zebra, Dr. Evans noticed that it was ''hyperexcited . . . very nervous . . . [and] trembling'' The zebra was about four feet in height and weighed about 400 pounds. Other evidence will be set forth as occasion requires.

### I.

#### EXCEPTIONS OF DEFENDANT ANIMAL FAIR.

Animal Fair's motions for directed verdicts were rightly denied. In its answers to interrogatories Animal Fair admitted it was the owner of a zebra (about ''four feet tall'') which was kept on the Exposition Grounds of Eastern on September 16, 1960, the date of the escape. There was evidence that the zebra which caused the damage was seen running loose on that day about one-half mile from the Exposition Grounds and that it was later captured at the Breck plant and returned to the Exposition Grounds. From this evidence the jury could have inferred that the zebra which caused the injuries and damage at the Breck plant was owned by Animal Fair.

There can be little doubt that, as matter of common knowledge, a zebra is to be classed as a wild animal as distinct from a domestic animal. Restatement: Torts, § 506. However that may be, the question as to which class the escaping zebra belonged was left to the jury who, on the basis of expert testimony, could have found that it was a wild animal.

The owner or keeper of a wild animal is strictly liable to another for damage done to his person or property. And this liability does not depend on proof of previous acts showing a vicious disposition; nor can the owner or keeper escape liability by showing that he has exercised the utmost care to confine the animal or otherwise prevent it from doing harm. *Bottcher* v. *Buck,* 265 Mass. 4 (bear). *Marble* v. *Ross,* 124 Mass. 44 (stag). *May* v. *Burdett,* 9 Ad. & El.

(N. S.) 101 (monkey). *Marlor* v. *Ball,* 16 T. L. R. 239 (zebra). *Filburn* v. *People's Palace & Aquarium Co. Ltd.* 25 Q. B. D. 258, 261 (elephant). Restatement: Torts, § 507. Prosser, Torts (3d ed.) § 75. Annotation, 69 A. L. R. 500.[3]

Animal Fair contends that the tort here is of the sort that would not entitle the plaintiffs to nominal damages and that since there was no evidence of damage the plaintiffs cannot recover. A similar contention is made by the defendant Jalbert and we shall deal with it here. It has been held in negligence cases that nominal damages may not be awarded and that a plaintiff without proof of actual damage may not recover. *Daniels* v. *Celeste,* 303 Mass. 148, 152. *Gregoire* v. *O'Leary,* 341 Mass. 727, 728. But this principle cannot avail either Animal Fair or Jalbert. An examination of their bills of exceptions convinces us that they were directed exclusively to questions of liability. Nothing touching the issue of damages is suggested. Had the point been brought to the attention of the plaintiffs or the trial judge, it is fair to assume that evidence bearing on that issue would have been included in the bills. Verdicts in substantial amounts ($5,000 for the plaintiff Smith and $3,926.65 for the plaintiff Breck) were returned by the jury. From this it is reasonable to infer that the damages were much more than nominal. The defendants' contention appears to be an afterthought and cannot prevail.

## II.

### EXCEPTIONS OF DEFENDANT JALBERT.

The defendant Jalbert contends that he was entitled to directed verdicts because there was no evidence that he was either owner or keeper of the zebra. There was, he argues, no more than a bald identity of name without confirmatory facts or circumstances. If this was all that the evidence showed, it would not be sufficient to prove identity. *Her-*

---

[3] It has been said, especially in the earlier cases, that the keeping of such an animal, in and of itself, constitutes negligence. See e.g. *Marble* v. *Ross,* 124 Mass. 44, 47. But according to the modern and prevailing view (which we think is preferable) strict liability is imposed quite apart from any concept of negligence. Prosser, Torts (3d ed.) § 75. Restatement: Torts, § 506.

*man* v. *Fine,* 314 Mass. 67, 68.  *Lodge* v. *Congress Taxi Assn. Inc.* 340 Mass. 570, 574.  But the proof went beyond this.  In his answers to interrogatories, Jalbert admitted that he was the keeper of a zebra on the Exposition Grounds on or about September 16, 1960.  Thomas M. Glynn, Jr., vice-president of Breck, testified that on the day of the accident he met ''one Ervin Jalbert of Old Orchard Beach, Maine,'' and that Jalbert told him that he was ''in charge of the exhibit.''  Jalbert stated in his answers to interrogatories that he resided in Old Orchard Beach, Maine, and that his occupation was ''amusement park manager.''  Officer Hubert of the West Springfield police department testified that he went to the Breck plant after receiving a call that a zebra was ''loose in the plant'' and while there he met one Ervine Jalbert; that Jalbert told him that he was ''manager of the show and totally responsible for it while it was at the Exposition Grounds''; and that Jalbert was in the cab of the truck which took the crated zebra back to the Exposition Grounds.

The foregoing evidence amply warranted a finding that Jalbert was the keeper of the zebra on the day that it escaped.  The liability of one keeping a wild animal has been dealt with above.  His motions for directed verdicts were rightly denied.

### III.

#### EXCEPTIONS OF DEFENDANT EASTERN.

Eastern contends that it was entitled to directed verdicts because (1) there was no evidence that the zebra escaped from Eastern's premises and (2) Eastern neither owned nor kept the zebra nor had any control or opportunity for control over it.

There was sufficient evidence admissible against Eastern to warrant a finding that the zebra escaped from its grounds.  The evidence recited above showed that the zebra was first seen by McCarthy about half a mile from the Exposition Grounds and was returned there after capture.  There was also testimony that several days later a zebra,

identified by cuts on the mouth and leg as the same one which entered the Breck building, was displayed on the Exposition Grounds in the Animal Fair, and was advertised by a sign reading: "The [z]ebra that toured the Breck plant."

It has not been decided in this Commonwealth whether the rule of strict liability for damage caused by wild animals is applicable to a defendant such as Eastern which neither owned the zebra nor, in the ordinary sense of the word, was its keeper.   See *Cruickshank* v. *Brockton Agricultural Soc.* 260 Mass. 283; *Andrews* v. *Jordan Marsh Co.* 283 Mass. 158. Eastern was, however, more than the mere owner of the land upon which the zebra was kept.   The evidence shows that one Reynolds, the secretary of Eastern, was in Maine during 1960 to make arrangements with Animal Fair to display the zebra in West Springfield.   While on the Exposition Grounds, the animal display was subject to the rules and regulations of Eastern.   Under No. 17 of the rules, Eastern had the right to reject any exhibit.   Under the licensing agreement, Animal Fair paid Eastern forty per cent of its gross admissions and guaranteed a $500 minimum.   As licensor, Eastern remained in possession of the premises and actively conducted the business of the exposition, of which the Animal Fair was a part.   Eastern was thus an active participant in exhibiting the zebra and shared in the profits of the owner.   We think that Eastern should be held to the same degree of responsibility as the owner and keeper for injuries caused by the zebra.   The rule of strict liability in a somewhat similar situation was applied in *Stamp* v. *Eighty-Sixth St. Amusement Co.* 95 Misc. (N. Y.) 599.   There an amusement company which engaged a lion act to perform on its premises was held liable without fault for damage caused when the lions escaped into the audience.   Eastern's motions for directed verdicts were properly denied.   Other exceptions have not been argued and will be treated as waived.

The entry in each case must be:

*Exceptions overruled.*