SCHELL, Plaintiff-Respondent, v. KNICKELBEIN, and another, Defendants-Respondents, Third-Party Plaintiffs: SECURITY SAVINGS & LOAN ASSOCIATION, Third-Party Defendant-Appellant.

*No. 75–396. Submitted on briefs March 30, 1977.—
Decided May 3, 1977.*
(Also reported in 252 N. W. 2d 921.)

For the appellant the cause was submitted on the briefs of *Schoendorf and Schoendorf* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *James R. Gass, Russell M. Ware* and *Kasdorf, Dall, Lewis & Swietlik,* all of Milwaukee.

CONNOR T. HANSEN, J. In August, 1974, Mrs. Elizabeth Schell commenced an action against Mark and Barbara Knickelbein because of the death of her husband who, she alleged, died as a result of injuries he received on June 17, 1974, when he was attacked by the Knickelbeins' dog. In the complaint, Elizabeth Schell alleged that the Knickelbeins had been negligent in their care and treatment of the dog.

Elizabeth Schell later served an amended complaint which again alleged that the Knickelbeins had been negligent in their care and treatment of the dog.

The Knickelbeins answered and denied that they were negligent. The Knickelbeins also served a third party complaint on Security Savings & Loan Association. The Knickelbeins alleged that in their mortgage payments to Security they included monthly payments to cover a homeowners policy of insurance; that in December, 1971, Security failed to use the funds to procure the homeowners policy of insurance; and that they would be damaged in the event they were found liable to Elizabeth Schell. The Knickelbeins requested contribution from Security in the event either or both of them were found liable to Elizabeth Schell.

Subsequently, Elizabeth Schell served a second amended complaint. She incorporated all of the paragraphs and allegations of her first amended complaint for her cause of action against the Knickelbeins. She also alleged causes of action directly against Security. She alleged that Security was liable to the Knickelbeins for Security's failure to maintain the insurance, and that she was a third party beneficiary of the mortgage contract between the Knickelbeins and Security.

Security demurred to the second amended complaint on the grounds that it attempted to improperly unite several causes of action and that none of the alleged causes of action set forth facts sufficient to constitute a cause of action as to Security.

Following a hearing, the circuit court entered the order overruling Security's demurrer.

Security argues that none of the three alleged causes of action in the second amended complaint sets forth sufficient facts to constitute a cause of action against it. Security also argues that the second amended complaint improperly unites in one action a cause of action against the Knickelbeins for negligence and alleged causes of action against Security for breach of contract. Security contends the joinder is improper because not all the parties are affected by both causes of action.

Schell argues that what are denominated as separate causes of action are really three alternative theories for one cause of action against Security. Schell argues that the second amended complaint is sufficient to state a cause of action against Security and that the joinder of parties and causes of action is proper because each defendant has an interest in the controversy adverse to herself.

## THE THIRD PARTY BENEFICIARY THEORY.

In the first cause of action against Security, Schell alleges:

—That the mortgage contract between Security and the Knickelbeins required the Knickelbeins to pay Security "a sum of money adequate to provide insurance" on the property at 1316 Nagawicka, Delafield, Wisconsin;

—That in December, 1968, a policy of homeowners insurance was obtained for the premises and that the insurer on the policy agreed to pay damages for the type of negligence Schell alleged against the Knickelbeins;

—That the Knickelbeins paid Security sufficient money to keep the policy in force, but that in December, 1971, Security failed to make the required premium payment; and as a result, the insurance coverage was terminated;

—". . . that the contract requirement of insurance and the monthly payment of sums to continue that insurance was for the benefit of all parties in the class occupied by the plaintiff, to-wit persons suffering loss or damage due to the occupation or use of or destruction of the premises covered by said insurance;"

—". . . that the third-party defendant's [Security's] failure to make the premium payment as required was a breach of this contract and that if the defendants-third-party plaintiffs [the Knickelbeins] are not able to satisfy a judgment entered against them in this matter the plaintiff will be damaged in the amount which would have been paid by the insurer in excess of the defendants-third-party plaintiffs' payment."

In short, Schell alleged that because Security breached its agreement to procure insurance, it is liable to the Knickelbeins for any damages they have to pay Schell up to the amount the insurer would have had to pay. According to Schell, she can maintain an action directly against Security on the theory that she is a third party beneficiary of the contract between Security and the Knickelbeins, which required Security to maintain the insurance with money supplied by the Knickelbeins.

Security contends that Schell cannot maintain a direct action against it on a third party beneficiary theory because the second amended complaint does not allege enough of the mortgage contract to show that Security and the Knickelbeins entered the agreement directly or primarily for Schell's benefit.

To maintain an action as a third party beneficiary, a plaintiff must show that the parties to the contract intentionally entered their agreement " ' "directly and primarily for his benefit." ' " *Ampex Corp. v. Sound Institute, Inc.*, 44 Wis.2d 674, 683, 172 N.W.2d 170 (1969). Saying the same thing in a different way, the

Court said in *Winnebago Homes, Inc. v. Sheldon,* 29 Wis.2d 692, 699, 139 N.W.2d 606 (1966): "In order to entitle a stranger to a contract to recover thereon, the contract must indicate an intention to secure some benefit to such third party."

A third party cannot maintain an action as a third party beneficiary if under the contract his was only an "indirect benefit, merely incidental to the contract between the parties." *Ampex, supra,* at 683.

The third party's complaint must allege facts to show that the agreement was entered primarily and directly for his benefit. *Ampex, supra,* at 684.

In an action for breach of contract, the complaint must set forth the substance of the agreement or have attached a copy of the agreement. *Galena Towing, Inc. v. North Milwaukee St. Bank,* 68 Wis.2d 34, 35, 227 N.W.2d 672 (1975).

In the instant case, the only contract provisions alleged in the second amended complaint are the Knickelbeins' agreement to pay Security money adequate to provide insurance and Security's responsibility to pay the insurance company the premium.

The second amended complaint does not allege enough of the contract to show what kind of insurance the parties contemplated. The mortgage contract may have only called for fire and extended coverage insurance that would protect Security's interest in the real estate and the mortgage. The complaint does not allege enough of the contract to show whether Security and the Knickelbeins contemplated securing liability insurance that would protect third parties against the Knickelbeins' negligence.

Thus, the complaint does not allege enough of the contract to show that Security and the Knickelbeins entered

the agreement for the benefit of Schell or others of her class. Having failed to show that, Schell has failed to allege facts sufficient to maintain an action as a third party beneficiary.

Arguing that as a third party beneficiary she can maintain a direct action against a party who breached a contract to secure insurance, Schell cites three cases from other jurisdictions, *Gothberg v. Nemerovski,* 58 Ill. App.2d 372, 208 N.E.2d 12 (1965); *Eschle v. Eastern Freight Ways,* 128 N.J. Super. 299, 319 A.2d 786 (1974); and *Sturcke v. Clark,* 261 So.2d 717 (La. App. 1971).

However, these cases are distinguishable. In each case the defendant agreed to procure automobile liability insurance which would have paid damages to the plaintiffs, the injured third parties. The Illinois and New Jersey courts reasoned that in entering the agreements to procure the liability insurance, the car owners contemplated, among other things, possible injury to third parties and the insurance coverage was for the direct benefit of the injured third parties. *Gothberg, supra,* at 386; and *Eschle, supra,* at 305.

The rationale of these cases cannot be applied to the instant case because, as noted above, the complaint does not allege enough of the contract to show that Security and the Knickelbeins contemplated securing liability insurance that would benefit injured third parties.

## THE FIDUCIARY THEORY.

Schell pleaded her second cause of action against Security in the alternative. She alleged that Security was in a fiduciary relationship with the Knickelbeins; or, in the alternative, that by failing to forward the insurance premium, Security elected to become the Knickelbeins' insurer.

As to the first alternative, she alleged:

— That Security accepted the Knickelbeins' funds as a fiduciary and retained the funds in an escrow account maintained by Security and required by the mortgage;

— That Security breached its duty as a fiduciary by failing to tender the premiums to maintain the existing insurance policy, by failing to obtain comparable insurance when the original policy was terminated, and by failing to inform the Knickelbeins of Security's failure to pay the premiums or obtain comparable insurance;

— That Security is required to indemnify the Knickelbeins to the same extent as the original insurer would have been if its policy had remained in force.

Schell argues that she can maintain an action as a third party beneficiary of Security's and the Knickelbeins' escrow agreement involving the purchase of liability insurance, a subject in which the community as a whole is interested.

The complaint is insufficient again because it does not allege enough of the contract for the court to determine, first, whether a fiduciary relationship existed, or, second, whether liability insurance was contemplated by the parties.

In agreeing to maintain the insurance, Security could have been acting in one of at least two capacities, in a fiduciary relationship or an agency relationship. *Richman v. Security Savings & Loan Asso.*, 57 Wis.2d 358, 362–363, 204 N.W.2d 511 (1973). The contract is not sufficiently set forth in the complaint for the Court to determine what relationship was created by the agreement.

Also, as noted earlier, the complaint does not set forth enough of the contract to show that the parties contemplated the maintenance of liability insurance.

### THE INSURER THEORY.

In her alternative second cause of action, Schell alleged:

— That Security's acceptance of money intended for insurance premiums and its failure to expend the money for that purpose was an election on its part to provide insurance to the property comparable to the insurance coverage under the terminated policy;

— That Security is, therefore, required to indemnify the Knickelbeins to the same extent as the original insurer would have been if the policy had remained in force.

Thus, on this theory, Schell contends that Security is liable to the Knickelbeins as their insurer.

There are at least two errors in this theory.

First, as argued by Security, this Court has already held: "The liability of one who breaches a contract to procure insurance is to pay damages, and is not that of an insurer." *Bentley v. Fayas,* 260 Wis. 177, 185, 50 N.W.2d 404 (1951). Therefore, Security is not liable as an insurer.

Second, even if Security were liable to the Knickelbeins as an insurer, Schell would have to qualify as a third party beneficiary to recover from Security directly. The direct liability statute, sec. 204.30(4), Stats., 1973, applies to commercial insurers licensed by the state to conduct business in Wisconsin. *Cords v. State,* 62 Wis.2d 42, 55, 214 N.W.2d 405 (1974). Security is not alleged to be such a commercial insurer. Again, Schell's complaint has not set forth enough of the contract to allege a third party beneficiary action.

For the reasons given, the second amended complaint does not set forth facts sufficient to constitute an action

by Mrs. Schell against Security, and the demurrer should be sustained. However, the plaintiffs should be given twenty days from the date of the remittitur of the record in which to file another amended complaint.

Because the appeal is disposed of on other grounds, the Court does not reach the issue of the alleged improper joinder of causes of action.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.