Phyllis Marie GILBERT, as Mother and Natural Guardian of Robin Lee Kendrick, a Minor, and Phyllis Marie Gilbert, Individually, Appellants,

v.

Russell CHRISTIANSEN, Defendant,

Towns Edge Properties, Inc., Respondent.

No. 46636.

Supreme Court of Minnesota.

Oct. 14, 1977.

Bell, Stapleton & Nolan and Mark M. Nolan, St. Paul, for appellants.

Van Eps & Gilmore and Duane E. Arndt, and Wayne D. Tritbough, Minneapolis, for respondent.

Heard before SHERAN, C. J., and PETERSON and TODD, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Plaintiffs appeal from a judgment for defendant entered on a directed verdict. We affirm.

This is an appeal involving construction of Minn.St. 347.22, the dog-bite statute. The facts are uncontroverted. On February 26, 1974, plaintiff Phyllis Gilbert and her 3-year-old son, Robin Kendrick, were at home in their apartment in Mounds View. A neighbor in the same apartment building, defendant Russell Christiansen, stopped in for a cup of coffee. Accompanying Christiansen was his German shorthaired dog. The dog lay under the kitchen table while coffee was served. Christiansen then left but did not take his dog with him, as Mrs. Gilbert requested. The dog some 15 minutes later bit Robin, causing severe facial lacerations.

Plaintiffs brought an action against Christiansen and Towns Edge Properties, Inc., (Towns Edge) a corporation that managed the apartment complex, alleging defendants' liability both under the common law and Minn.St. 347.22. Christiansen defaulted and judgment was entered against him. At the close of plaintiffs' case, Towns Edge moved for a directed verdict. The court granted the motion, holding that Towns Edge was not liable at common law and that it was not an "owner" of the dog within the meaning of the statute. On this

appeal, plaintiffs challenge the court's ruling regarding the statutory liability of Towns Edge.

In 1951 the legislature provided an additional source of liability, apart from the common law, for dog owners. Minn.St. 347.22 provides:

> "If a dog, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be in any urban area, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. *The term 'owner' includes any person harboring or keeping a dog.* The term 'dog' includes both male and female of the canine species." (Italics supplied.)

In *Verrett v. Silver,* Minn., 244 N.W.2d 147 (1976), we considered the meaning of "owner" and approved the following jury instruction as an accurate statement of the law:

> " * * * Harboring or keeping a dog means something more than a meal of mercy to a stray dog or the casual presence of a dog on someone's premises. Harboring means to afford lodging, to shelter or to give refuge to a dog. Keeping a dog, as used in the statute before us, implies more than the mere harboring of the dog for a limited purpose or time. One becomes the keeper of a dog only when he either with or without the owner's permission undertakes to manage, control or care for it as dog owners in general are accustomed to do." Minn., 244 N.W.2d 149.

It is evident from application of this statement to the present case that defendant apartment managers are not harborers or keepers of tenants' dogs, as these terms are used in Minn.St. 347.22. Plaintiffs suggest two factors, however, that purportedly militate for a finding that Towns Edge was the "owner" of the dog.

Initially, plaintiffs contend that Towns Edge had a right to exercise control over the dog and therefore should be responsible for the dog's conduct. The control cited by plaintiffs consisted of rules and regulations promulgated by Towns Edge relating to the care of pets and its right to exclude dogs from the complex. This argument is unpersuasive because the rules and regulations, even if an adequate basis for finding control, were not applicable within a tenant's apartment. Compare *Siegel v. 1536–46 St. John's Place Corp.,* 184 Misc. 1053, 57 N.Y. S.2d 473 (City Ct. 1945) (owner and operator of an apartment house, who possessed prior knowledge of the vicious tendencies of the superintendent's dog, held responsible for the action of the dog in a common area) with *Denagy v. Doscher,* 40 Misc.2d 643, 243 N.Y.S.2d 575 (Sup.Ct.1963) (complaint insufficient because it failed to allege that the landlord controlled the property where the dog was kept).[1] Nor is the mere right to exclude dogs a sufficient ground to make Towns Edge an insurer of the conduct of dogs residing in the apartment complex. Other courts have implicitly agreed by failing to find a landlord responsible on that basis alone for a tenant's pet. *Denagy v. Doscher,* 40 Misc.2d 643, 243 N.Y.S.2d 575 (Sup.Ct.1963); *Collins v. Otto,* 149 Colo. 489, 369 P.2d 564 (1962); *Harris v. Turner,* 1 Wash.App. 1023, 466 P.2d 202 (1970). Accord, *Hagenau v. Millard,* 182 Wis. 544, 195 N.W. 718 (1923) (employer who provided employee living quarters and also sublet another room of building to employee's husband not keeper of her dog), cited approvingly in *Verrett v. Silver,* Minn., 244 N.W.2d 147, 149 (1976); *Weiss v. Wilkins,* 313 A.2d 897 (Del.Super.Ct.1973) (lessor of gas station); *Laguttuta v. Chisholm,* 65 A.D. 326, 72 N.Y.S. 905 (1901) (principal whose agent managed property); Restatement, Torts 2d, § 514, comment *a*: "[T]he possession of the land on which the animal is kept, even when coupled with permission given to a third person to keep it, is not

---

1. *Verrett v. Silver,* Minn., 244 N.W.2d 147 (1976), indicates that one can be an "owner" without immediate control of the dog. The defendant there was on vacation when the dog

bite occurred, but he permitted the owner and her dog to stay in his house, an area over which he had the right to exercise control.

enough to make the possessor of the land liable as a harborer of the animal." [2]

Plaintiffs also contend that Towns Edge gained an economic benefit from the dog's presence in the apartment building and therefore should be denominated an "owner." An increased rental of $10 per month was charged to tenants with pets. Uncontroverted testimony indicated, however, that the surcharge was designed to cover the increased property damage and maintenance necessitated by the presence of pets. Increased occupancy is the second supposed source of economic advantage derived by permitting tenants to have pets. Although increased occupancy is a credible source of economic benefit, it is an insufficient basis on which to deem Towns Edge an "owner." See cases cited, *supra*. In the cases that recognize economic benefit as a relevant factor in determining whether a defendant was a keeper of an animal, the economic benefit derived from the animal's presence was much more direct. Compare *Stamp v. Eighty-Sixth Street Amusement Co.,* 95 Misc. 599, 159 N.Y.S. 683 (Sup.Ct.1916) (lions that escaped from cages and caused panic in theater were in keeping of theater owner who contracted for their appearance); *Smith v. Jalbert,* 351 Mass. 432, 221 N.E.2d 744 (1966) (zebra that escaped from animal display was in "keeping" of licensor of exhibit, who subjected the exhibit to rules and regulations and shared in its proceeds) with *Theobald v. Grey Public Relations, Inc.,* 39 A.D.2d 902, 334 N.Y.S.2d 281, leave to appeal denied, 31 N.Y.2d 644, 339 N.Y.S.2d 1025, 291 N.E.2d 589 (1972) (model at auto show mauled by lion; no basis for imposing liability on lessor of the premises).

The circumstances do not indicate that Towns Edge harbored or kept the dog so as to be liable as its "owner." Despite plaintiffs' attempt to demonstrate that the instant facts are unique, a judgment in their favor would render it difficult, either through unavailability or prohibitive cost, for prospective tenants with dogs to find housing. Determination of policy on this matter is a question for the legislature. At present, Minn.St. 347.22 does not envision Towns Edge's liability in these circumstances.

Affirmed.

WAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

2. Generally, cases from other jurisdictions do not involve construction of a statute, but since at common law one who harbors a dog is as responsible as its possessor for its conduct, Restatement, Torts 2d, § 514, the cases are relevant to the instant determination.