Sarah MALONE, by her Guardian ad Litem, Lisa A. Bangert, Laurie Malone and Todd Malone, Plaintiffs-Appellants,†

v.

Joseph FONS and Frankenmuth Mutual Insurance Company, Defendants-Respondents,

Barbara GARNER, Terrance Garner, and ABC Insurance Company, Defendants.

Court of Appeals

*No. 96–3326. Submitted on briefs January 7, 1998.—Decided March 17, 1998.*

(Also reported in 580 N.W.2d 697.)

†Petition to review denied.

746

748

On behalf of the plaintiffs-appellants, the cause was submitted on the brief of *Hope K. Olson* and *Lisa A. Bangert* of *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *G. George Lawrence* and *Steven W. Keane* of *Hinshaw & Culbertson*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

CURLEY, J. Sarah Malone, by her guardian ad litem, and her parents, Laurie and Todd Malone (collectively, "the Malones"), appeal from summary judgment entered in favor of the respondents which dismissed all their causes of action against Joseph Fons and his insurance company. The causes of action were brought against Fons because a dog owned by his tenant bit Sarah Malone. The Malones contend the trial court erred because: Fons's conduct fell within the parameters of a claim for common law negligence; Fons was a "harborer" of his tenant's dog, as that term is defined in § 174.001, STATS., and was subject to the double damages provision found in § 174.02(1)(b), STATS., because Fons had notice that the dog previously injured a person; and Sarah Malone, the dog-bite victim, was a third-party beneficiary of either Fons's contract, requiring him to provide liability insurance to his tenant, or of his misrepresentation to the tenant

that her rent payment included a sum for liability insurance for her. Because we conclude that the holding enunciated in *Gonzales v. Wilkinson*, 68 Wis. 2d 154, 227 N.W.2d 907 (1975), which held that a landlord is not an insurer for the acts of his tenant's dog in a common law negligence claim, controls; that Fons does not qualify as a "harborer" for § 174.001 purposes; that there was no contract to provide Garner with liability insurance, and that the Malones's third-party beneficiary of a "misrepresentation" theory is insufficiently developed, we affirm.

## I. BACKGROUND.

Sarah Malone was eight years old on March 22, 1994, when she was bitten by a Rottweiler belonging to Barbara Garner. As a result of the bite, she sustained serious injury. Garner rented her single family home from Fons; however, Sarah was not bitten on this property. She was in a driveway adjacent to the Garner residence when the dog broke free of the leash being held by one of Barbara Garner's children, mauling Sarah. Although disputed by Fons, but considered true by the trial court for summary judgment purposes, the Malones also claimed that the dog had previously broken free of his leash, run across the street and placed his jaws around the arm of another young child. Further, the Malones claimed, again disputed by Fons, but accepted as true by the trial court, that the father of the child involved in this first incident related the occurrence to Fons and complained about the dog. As further proof of Fons's negligence, the Malones submitted a rental agreement between Fons and Garner which prohibited pets, which Fons failed to enforce. With respect to their third-party beneficiary claim, the Malones assert that Fons either contracted with Garner to pro-

vide her with liability insurance, or, in the alternative, that Fons misrepresented to her that he would be providing this type of insurance when originally renting her the property.

The Malones's original complaint named only Garner, the owner of the dog, as a defendant. Later, the complaint was amended twice to include Fons, and his insurer, as defendants. The second amended complaint alleged claims of common law negligence and strict liability under § 174.02, STATS., against both Garner and Fons. The Malones sought damages through their third-party beneficiary claims from Fons only. Fons brought a summary judgment motion which the trial court granted, finding that Fons owed no duty to Sarah Malone as a matter of law and dismissing all of the Malones's claims against Fons and his insurer.

## II. ANALYSIS.

■■

Our review of a trial court's grant of summary judgment is *de novo*. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). We use the same methodology as the trial court. *Id.* That methodology has been described in many cases, *see, e.g., Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473, 476–77 (1980), and need not be repeated here. Summary judgment must be granted if the evidentiary material demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RULE 802.08(2), STATS.

### A. Common law negligence claim.

The Malones contend that Fons, as the landlord of the dog's owner, was liable under common law negligence for injuries sustained from the dog bite because he had a "no pets" rule which he failed to enforce, he knew of the dog's existence, and he had been notified of an earlier incident where the dog exhibited mischievous behavior. The trial court ruled that *Gonzales v. Wilkinson*, 68 Wis. 2d 154, 227 N.W.2d 907 (1975), prevents the Malones from recovering from Fons on their common law negligence theory. In *Gonzales*, a young child wandered onto a neighboring tenant's property and was attacked and bitten in the head by the tenant's basset hound. The plaintiffs sought to impose liability on both the tenant and the landlord under a claim of maintaining an attractive nuisance. *Id.* at 155, 227 N.W.2d at 909. The supreme court, reviewing only the claim against the landlord, held that the attractive nuisance doctrine was unavailable to the plaintiffs. *Id.* at 157, 227 N.W.2d at 909. The dissenting minority, however, stated that it would not reverse because the complaint, liberally construed, alleged a common law negligence claim against the landlord. In response, the *Gonzales* majority stated:

> Although not argued by the parties, a minority of the court would hold the complaint sufficient to state a cause of action against the landowner Wilkinson upon the basis of common-law negligence. The majority does not agree.
>
> In examining the complaint we find no allegation that James Wilkinson was either the owner or the keeper of the dog, nor is it alleged that he in any way had any dominion over the dog. There is an allegation that he knew his tenant, Ray Prueher, maintained a vicious dog on the premises but the law does not require him, as the owner of the building, to be an insurer for the acts of his tenant. Under

752

> the allegations of this complaint, we hold that the ownership and control of the premises created no duty on the part of the owner of the premises to the plaintiffs.

*Id.* at 158, 227 N.W.2d at 910.

The Malones argue that the trial court erred in finding this statement dispositive of the case because, in their view, the language in *Gonzales* addressing the common law negligence claim was purely dicta as it was unnecessary to the issue presented in the case. Further, if this court concludes the language from *Gonzales* is a holding, rather than dicta, the Malones argue that more recent cases appear to blur the efficacy of the *Gonzales* ruling. They cite *Pagelsdorf v. Safeco Ins. Co. of America*, 91 Wis. 2d 734, 284 N.W.2d 55 (1979), and *Pattermann v. Pattermann*, 173 Wis. 2d 143, 496 N.W.2d 613 (Ct. App. 1992), in support of this argument.

We conclude that: (1) the relevant statements in *Gonzales* were not a dicta, but rather, expressed the court's holding; (2) according to the plain language of *Gonzales*, Fons is not liable, on common law negligence grounds, for the bite which Sarah received from Fons's tenant's dog; and (3) neither *Pagelsdorf* nor *Pattermann* have modified *Gonzales*'s holding as it relates to the facts of this particular case.

### 1. *Gonzales*—dicta or holding?

As the Malones point out, the complaint in the *Gonzales* case concerned an attractive nuisance claim, not a common law negligence claim. *See Gonzales*, 68 Wis. 2d at 155–57, 227 N.W.2d at 909. The supreme court, however, in response to the dissent, went on to discuss, *sua sponte*, whether the facts set forth a cause

of action in common law negligence. *See id.* at 158, 227 N.W.2d at 910. They determined that they did not. *See id.* The Malones claim that this determination is dicta. We disagree.

"Dicta" is language which is broader than necessary to determine an issue. *See State ex rel. Schultz v. Bruendl*, 168 Wis. 2d 101, 112, 483 N.W.2d 238, 241 (Ct. App. 1992). However, "[w]hen an appellate court intentionally takes up, discusses and decides a question germane to a controversy, such a decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision." *State v. Taylor*, 205 Wis. 2d 664, 670, 556 N.W.2d 779, 782 (Ct. App. 1996). Applying that test, we determine that the language in *Gonzales* pertaining to its ruling on the common-law negligence is not dicta, but rather, a holding. We base this on our reading of *Gonzales* where, we note, the majority intentionally took up, discussed and decided the question of whether the defendant-landlord could be liable on a common-law negligence theory. That question was germane to the controversy because, had the majority adopted the minority position, reversal would not have been necessary. Thus, the *Gonzales* ruling on common law negligence is not dicta.

2. Fons is not liable for common-law negligence under *Gonzales*.

We note that the facts of *Gonzales* are strikingly similar to the facts in the instant case. As in this case, the landlord in *Gonzales* was sued after a tenant's dog bit a child who lived nearby. Here, as in *Gonzales*, the landlord was neither the owner nor the keeper of the dog, which belonged to the tenant. In *Gonzales* the supreme court held that the landlord could not be held

liable on a common-law negligence theory for the acts of his tenant's dog, stating:

> In examining the complaint we find no allegation that James Wilkinson was either the owner or the keeper of the dog, nor is it alleged that he in any way had any dominion over the dog. There is an allegation that he knew his tenant, Ray Prueher, maintained a vicious dog on the premises but the law does not require him, as the owner of the building, to be an insurer for the acts of his tenant. Under the allegations of this complaint, we hold that the ownership and control of the premises created no duty on the part of the owner of the premises to the plaintiffs.

*Gonzales*, 68 Wis. 2d at 158, 227 N.W.2d at 910. Aside from their contention that this language is dicta, the Malones do not seriously dispute that this language, standing alone and apart from other cases, when applied to the very similar facts in the instant case, absolves Fons of liability for common-law negligence.[1] Clearly, *Gonzales* holds that a landlord, who is not an owner or keeper of a tenant's dog, and who does not exercise dominion and control over the dog, is not liable on common-law negligence grounds for the acts of his tenant's dog.

The rule promulgated in *Gonzales* is also consistent with cases concerning non-landlord-related common-law negligence dog-bite claims, and with a

---

[1] The dissent relies heavily on the Malones's claim that Fons and Garner entered into a written rental agreement prohibiting pets. However, the rental agreement in question was never signed by the parties. Moreover, at the time of the initial discussions, Garner had no pets and both Garner and Fons agree there was no discussion about pets. Regardless, given the Gonzales holding, it is irrelevant to the analysis.

jury instruction covering the common law liability of the owners or keepers of animals.[2] Both hold that only an owner or a keeper of an animal can be held liable for common-law negligence.

The jury instruction, while not precedent setting, is, nonetheless, persuasive authority. *See State v. Olson*, 175 Wis. 2d 628, 642 n.10, 498 N.W.2d 661, 667 n.10 (1993). Clearly, the instruction only contemplates liability for owners or keepers of animals, defined as those who own, or have possession and control of animals. Non-landlord-related animal injury cases also restrict common-law negligence liability to those who are owners or keepers of the animals. *See White v. Leeder*, 149 Wis. 2d 948, 955–58, 440 N.W.2d 557, 560–561 (1989) ("The common-law rule first requires the *owner or keeper* to use ordinary care in controlling the characteristics normal to the animal's class. . . . The liability of an *owner or keeper* is predicated upon the failure to exercise ordinary care in the restraint and control of the animal.") (emphasis added); *see also Chambliss v. Gorelik*, 52 Wis. 2d 523, 528, 191 N.W.2d

---

[2] WIS J I—CIVIL 1391, "Liability of Owner or Keeper of Animal—Common Law", reads:

An owner (keeper) of a(n) (insert name of animal) is deemed to be aware of the natural traits and habits which are usual to a(n) (animal) and must use ordinary care to restrain and control the animal so that it will not in the exercise of its natural traits and habits cause injury or damage to the person or property of another.

In addition, if an owner (keeper) is aware or in the exercise of ordinary care should be aware that the animal possesses any unusual traits or habits that would be likely to result in injury or damage, then the owner (keeper) must use ordinary care to restrain the animal as necessary to prevent the injury or damage.

(A person is said to be a keeper of an animal if, even though not owning the animal, the person has possession and control of it or if the person permits another person who is a member of his or her family or household to maintain the animal on his or her premises.)

34, 37 (1971) ("At common law the *owner or keeper* of a dog was not liable for the vicious or mischievous acts of the dog unless he had prior knowledge of the vicious or mischievous propensities of the dog or unless the injury was attributable to the negligence of the *owner or keeper*.") (emphasis added).

Thus, it would appear that *Gonzales* simply extends the common law rule to a landlord-tenant situation. A landlord is normally neither an owner nor a keeper of his or her tenants' dogs, nor does a landlord usually exercise any control over those dogs. Hence, a landlord is not liable under the common law for any injuries caused by a tenant's dog. Therefore, we conclude that, according to the plain language of *Gonzales*, Fons is not liable on common-law negligence grounds for the dog bite inflicted upon Sarah by his tenant's dog.

3. Has *Gonzales* been modified or overruled by later cases?

The Malones also claim that even if the language of *Gonzales* is not dicta, and would absolve Fons of liability for common-law negligence, subsequent Wisconsin cases have modified *Gonzales*'s effect. The Malones do not claim that *Gonzales* has been expressly overruled or modified; rather, they assert that, since *Gonzales*, the law of negligence has "evolved" to "create [a] common law duty on the part of a landlord for a vicious dog kept by his tenants." We disagree.

The Malones bolster their argument with two cases. The first is the *Pattermann* case. In *Pattermann*, the Pattermann family gathered at Sallie Pattermann's home in preparation for a family reunion. Scott Pattermann and his family arrived from Florida

with their dog, Mandy, a chow chow. Sallie allowed the dog to be placed in a hallway, and shortly thereafter, Erin Pattermann, another guest, arrived. When she bent down to pet the dog, the dog jumped up and bit her in the face. *See Pattermann*, 173 Wis. 2d at 148, 496 N.W.2d at 615. The plaintiff's complaint alleged both a common-law negligence claim and a strict liability claim under § 174.02, STATS., against Sallie. *See id.* The trial court directed a verdict in Sallie's favor. *Id.* at 148–49, 496 N.W.2d at 615. Although the appellate court affirmed the trial court's grant of a directed verdict with respect to both claims, the appellate court stated, with regard to the common-law negligence claim: "Even if Sallie were not the owner or keeper of the animal, as the landowner she may be liable for negligence associated with a known dangerous dog allowed on her premises." *Id.* at 151, 496 N.W.2d at 616 (citing *Klimek v. Drzewiecki*, 135 Mich. App. 115, 352 N.W.2d 361 (1984)). The Malones seize upon this statement and argue that *Pattermann* "makes clear that a dog may be considered a dangerous condition of the premises and a landowner may be held liable if he knows the dog had previously bitten someone even though he is not the owner or keeper of the dog." The Malones also argue that "landowner," as the term was used in *Pattermann*, applies to landlords as well as other landowners, and, as a consequence, Fons may be liable for common-law negligence in the instant case. We disagree.

First, in contrast to *Gonzales*, *Pattermann*'s facts are markedly different from the facts in this case. Although *Pattermann* involved a dog-bite and a landowner, nowhere in the case is there a discussion about the duties of a landlord. Therefore, we find the suggestion that the *Pattermann* court intended its holding to

apply to landlords speculative at best. Second, we note that the court in *Pattermann* merely assumed, without deciding, that the plaintiff had correctly cited the law.[3] Finally, the court of appeals's statements in *Pattermann* cannot be read to allow common-law negligence claims against landlords for injuries caused by dangerous dogs on their premises because such a holding would expressly conflict with the supreme court's prior holding in *Gonzales*. The court of appeals has no authority to overrule, modify or withdraw language from even its own decisions, *see Cook v. Cook*, 208 Wis. 2d 166, 185–90, 560 N.W.2d 246, 254–56 (1997), and obviously has no authority to overrule or modify decisions of the supreme court. *See id.* at 189, 560 N.W.2d at 256. Therefore, we conclude that *Pattermann* is factually distinguishable from the instant case and that *Pattermann* did not overrule or modify *Gonzales*. Thus, we conclude that *Gonzales*'s holding is unaffected by *Pattermann*.

The Malones also cite *Pagelsdorf* to support their theory. In *Pagelsdorf*, the plaintiff, a neighbor, was injured when a rotted railing collapsed due to the landlord's failure to maintain the premises. *Pagelsdorf*, 91 Wis. 2d at 735–37, 284 N.W.2d at 56–57. Although not a dog-bite case, *Pagelsdorf* broke new ground and set a new standard for landlords in the maintenance of their rental property. Prior to *Pagelsdorf*, a landlord, with certain exceptions, enjoyed a general rule of nonliabil-

---

[3] "[Plaintiff's] theory assumes it is sufficient to prove either generally that a chow as a breed is dangerous or that the particular dog has evinced a vicious propensity. Because we conclude that she has proven neither, we will assume without deciding that [the plaintiff] accurately states the law." *Pattermann v. Pattermann*, 173 Wis. 2d 143, 151 n.5, 496 N.W.2d 613, 616 n.5 (Ct. App. 1991).

759

ity for injuries to his tenants and their visitors resulting from defects in the premises. *See id.* at 740, 284 N.W.2d at 58 (citing *Skrzypczak v. Kanieczka*, 224 Wis. 455, 272 N.W. 659 (1937)); *Pagelsdorf*, however, abrogated that general rule, stating:

> We believe, however, that the better public policy lies in the abandonment of the general rule of nonliability and the adoption of a rule that a landlord is under a *duty to exercise ordinary care in the maintenance of the premises.*

*Id.* at 741, 284 N.W.2d at 59 (emphasis added). The Malones essentially argue that, by abandoning the general rule of nonliability for landlords, *Pagelsdorf* overruled *Gonzales*'s holding that a landlord may not be liable, on common-law negligence grounds, for injuries caused by his tenants' dogs. *Pagelsdorf* does contain two sweeping sentences which, if read out of context, would seem to support the Malones's position. In the beginning of the opinion, the court stated: "Abrogating the landlord's general cloak of immunity at common law, we hold that a landlord must exercise ordinary care toward his tenant and others on the premises with permission." *Id.* at 735, 284 N.W.2d at 56. Similarly, near the end of the opinion, the court stated: "In conclusion, a landlord owes his tenant or anyone on the premises with the tenant's consent a duty to exercise ordinary care." *Id.* at 745, 284 N.W.2d at 61. After examining the facts of the case and the context of those statements, however, we conclude that *Pagelsdorf*'s rule is limited to situations dealing with property maintenance issues and defects in the premises, and thus, that *Pagelsdorf* did not overrule *Gonzales*'s rule regarding dog bites.

*Pagelsdorf* involved a defective wooden porch railing, not a dog bite. Throughout the opinion, the *Pagelsdorf* court repeatedly refers to "defects" and "defective premises," and to the landlord's duty to "maintain" the premises. For instance, in the first sentence of the opinion, the court states, "We dispose of this appeal by addressing the single issue of the scope of a landlord's duty toward his tenant's invitee who is injured *as a result of defective premises.*" *Id.* at 735, 284 N.W.2d at 56 (emphasis added). Also, the court states: "The question on which the appeal turns is whether the trial court erred in failing to instruct the jury that Mahnke [the landlord] owed Pagelsdorf a duty to exercise ordinary care *in maintaining the premises.*" *Id.* at 738, 284 N.W.2d at 58 (emphasis added). Later, the court states: "We conclude that there is no remaining justification for the landlord's general cloak of common law immunity and hereby abolish the general common law principle of nonliability of landlords toward persons injured *as a result of their defective premises.*" *Id.* at 744, 284 N.W.2d at 60 (emphasis added). Finally, the court concludes by stating:

> In conclusion, a landlord owes his tenant or anyone on the premises with the tenant's consent a duty to exercise ordinary care. If a person lawfully on the premises is injured as a result of the landlord's negligence *in maintaining the premises,* he is entitled to recover from the landlord under general negligence principles. Issues of notice of *the defect,* its obviousness, control of the premises, and so forth are all relevant only insofar as they bear on the ultimate question: Did the landlord exercise ordinary care *in the maintenance of the premises* under all the circumstances?

*Id.* at 745, 284 N.W.2d at 61. The Malones have cited no persuasive authority for the proposition that a tenant's dog should be considered a "defect" of the premises, or that a landlord's act of permitting a tenant to own a dog should be equated with a landlord's failure to repair a defect, or to properly "maintain the premises." Although the Malones cite *Pattermann* as support for their claim that a dog can be considered a dangerous condition, that case did not involve a landlord, and, contrary to the Malones's assertions, did not in any way hold that a tenant's dog is a "defect" in the premises similar to a rotted wooden railing. Therefore, we conclude that *Pagelsdorf* has not affected the validity of the rule of law enunciated in *Gonzales*, and that the trial court correctly granted summary judgment with respect to the Malones's common-law negligence claim against Fons.[4]

### B. Section 174.02(1), STATS., claim.

The Malones also claim that the trial court erred by finding that Fons could not be held strictly liable under § 174.02, STATS. Subject to the doctrine of com-

---

[4] Additionally, even if *Pagelsdorf* did overrule *Gonzales*, Fons may not be liable under *Pagelsdorf*, because the injury in this case did not occur on the landlord's premises. As noted, *Pagelsdorf* states: "[A] landlord owes his tenant or anyone on the premises with the tenant's consent a duty to exercise ordinary care. If a person lawfully on the premises is injured as a result of the landlord's negligence in maintaining the premises, he is entitled to recover from the landlord under general negligence principles." *Id.* at 745, 284 N.W.2d at 61. By the Malones's own admission, on the day of the injury, Sarah was never on the premises which Fons had leased to the Garners. Therefore, even if *Pagelsdorf* did apply, Fons would probably still be entitled to summary judgment.

parative negligence, § 174.02(1)(a),[5] imposes strict liability on dog owners for injuries caused by their dogs. The Malones claim that Fons should be held liable under § 174.02 because he was a "harborer" of his tenant's dog as that term is used in § 174.001(5), STATS. Further, the Malones claim that Fons should be liable for double damages under § 174.02(1)(b) because he knew his tenant's dog had previously attacked another child.[6] We conclude that the trial court was correct in holding that Fons could not be held strictly liable under § 174.02.

Determining whether Fons may be held strictly liable under § 174.02, STATS., involves the construction and application of a statute to a set of undisputed facts, which is a task we perform *de novo. See Wilson v. Waukesha County*, 157 Wis. 2d 790, 794, 460 N.W.2d 830, 832 (Ct. App. 1990). Section 174.02 is in derogation of the common law, and thus, it will be strictly construed. *Pattermann*, 173 Wis. 2d at 150, 496 N.W.2d at 615. Our purpose in engaging in statutory construction is to ascertain and give effect to the intent of the legislature.

---

[5] Section 174.02(1)(a), *Stats.*, provides:

**Owner's liability for damage caused by dog; penalties; court order to kill a dog. (1)** LIABILITY FOR INJURY. (a) Without notice. Subject to s. 895.045, the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property.

[6] Section 174.02(1)(b), *Stats.*, provides for double damages when the dog owner had notice that the dog had previously injured a person, domestic animal or property, stating:

(b) *After notice.* Subject to s. 895.045, the owner of a dog is liable for 2 times the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property if the owner was notified or knew that the dog previously injured or caused injury to a person, domestic animal or property.

*DeMars v. LaPour*, 123 Wis. 2d 366, 370, 366 N.W.2d 891, 893 (1985). In determining legislative intent, we first look to the language of the statute itself. *P.A.K. v. State*, 119 Wis. 2d 871, 878, 350 N.W.2d 677, 681 (1984). If the statute's meaning is clear on its face, we will not look outside the statute in applying it. *Id.* However, if the language of the statute is ambiguous, we examine the scope, history, context, subject matter, and object of the statute to discern the legislative intent. *Id.* at 878, 350 N.W.2d at 681–82. A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in either two or more senses. *Id.* at 878–79, 350 N.W.2d at 682.

Section 174.02, STATS., expressly provides that only "owners" of dogs can be held strictly liable under that statute. Section 174.001(5), STATS., however, defines a dog owner, for the purpose of § 174.02, as "any person who owns, harbors or keeps a dog." The Malones do not argue that Fons is an owner or keeper, as those terms are used in § 174.001(5). Rather, the only issue is whether Fons, as a landlord, falls within the statutory ambit of a "harborer" under § 174.001(5), and thereby an owner under § 174.02.

Chapter 174 does not define the term "harborer" found in § 174.001(5), STATS. Neither party has cited any Wisconsin cases which determined that a landlord, merely by leasing property, becomes a "harborer" of his or her tenant's dog, but the *Pattermann* court did consider the term's meaning in the context of that case's different factual background. In *Pattermann*, the court held:

> The word "harbor" by its meaning signifies protection. "Harboring a dog" means something more than a meal of mercy to a stray dog or the casual

presence of a dog on someone's premises. Harboring means to afford lodging, to shelter or to give refuge to a dog.

*Pattermann,* 173 Wis. 2d at 151, 496 N.W.2d at 616. The court also held that the defendant's adult son's dog's "transient invasion" of the defendant's home was "insufficient to trigger the statute." *Id.* The Malones misinterpret this particular comment, and extrapolate from it that, in this case, Fons harbored his tenant's dog because the dog was "afforded the opportunity for lodging, shelter and refuge on more than a transient basis." The Malones, however, have missed *Pattermann's* point. *Pattermann* does not make every person who happens to have a dog on his or her premises, whether the premises are leased or not, a "harborer" of the dog merely because the dog has been on the person's premises for more than a "transient" period of time. *Pattermann* merely shows that a person will *not* be considered a harborer if a dog has made only a "transient invasion" of the premises. Thus, we conclude that the mere fact that Fons's tenants' dog had been on the premises that Fons leased to the Garners for a lengthy period of time does not make Fons a harborer of his tenant's dog.

According to *Pattermann,* in order to be considered a "harborer," one must "afford lodging . . . shelter or . . . give refuge to a dog." As support for this proposition, the *Pattermann* court cited *Gilbert v. Christiansen,* 259 N.W.2d 896 (Minn. 1977). In *Gilbert,* the plaintiff, a tenant in an apartment building, sued the apartment managers after a tenant's dog bit the plaintiff's three-year-old son. *Id.* at 896. The appeal involved the construction of Minnesota's dog-bite statute, which placed liability on dog owners for injuries resulting from unprovoked attacks by their dogs. *Id.* at 896–97. The

Minnesota statute, similar to § 174.02, STATS., defined an owner as "any person harboring or keeping a dog." *Id.* at 897. In deciding what constitutes harboring or keeping a dog, the court approved the use of a jury instruction which stated that: "Harboring or keeping a dog means something more than a meal of mercy to a stray dog or the casual presence of a dog on someone's premises. Harboring means to afford lodging, to shelter or to give refuge to a dog." *Id.* The court then stated that: "It is evident from application of this statement to the present case that defendant apartment managers are not harborers . . . of [their] tenants' dogs. . . ." *Id.* The court reached this conclusion even though the apartment managers had the right to exclude dogs from the apartment complex and charged a $10 monthly fee to tenants with pets. *Id.* at 897–98. Thus, consistent with *Pattermann* and *Gilbert*, we conclude that a landlord does not become a harborer of a tenant's dog merely by permitting his or her tenant to keep the dog. Because there is no evidence that Fons, aside from tacitly permitting Garner to keep a dog in the house, afforded lodging, or gave shelter or refuge to the dog, the trial court correctly found that Fons could not be liable under § 174.02.[7] We also note in passing that to decide otherwise could very well lead to the abolishment of dogs in rental properties. Landlords and their insurance carriers would be reluctant to allow tenants to keep any dogs for fear of liability under § 174.02, STATS. Such a development would deprive those who

---

[7] The Restatement (Second) of Torts also supports this analysis, by stating that: "[T]he possession of the land on which the animal is kept, even when coupled with permission given to a third person to keep it, is not enough to make the possessor of the land liable as a harborer of the animal." RESTATEMENT (SECOND) OF TORTS 514 cmt. a (1977).

are unable to afford their own homes of the many positive benefits of dog ownership. Also, we believe our ruling promotes the sentiment expressed by the Washington court in *Clemmons v. Fidler*, 791 P.2d 257 (Wash. Ct. App. 1990) that: "Our rule also promotes the salutary policy of placing responsibility where it belongs, rather than fostering a search for a defendant whose affluence is more apparent than his culpability." *Id.* at 260.

### C. *Third-party beneficiary claim.*

Finally, the Malones contend that Sarah is the third-party beneficiary of either a contract, which Fons breached, requiring Fons to provide Barbara Garner with liability insurance, or of a misrepresentation made to Garner concerning liability insurance. First, although Wisconsin recognizes a cause of action by a person claiming to be a third-party beneficiary of a *contract, see Schell v. Knickelbein*, 77 Wis. 2d 344, 348–50, 252 N.W.2d 921, 924–25 (1977), the Malones have cited absolutely no authority, Wisconsin or otherwise, recognizing a cause of action based on a third-party beneficiary to a *misrepresentation* theory. Therefore, we conclude that this argument lacks sufficient merit and we decline to address it. *See Libertarian Party v. State*, 199 Wis. 2d 790, 801, 546 N.W.2d 424, 430 (1996) (an appellate court need not address issues that lack sufficient merit to warrant individual attention).

Second, Sarah could only be a third-party beneficiary of a contract between Fons and Garner if Fons actually contracted with Garner to provide her with liability insurance. We conclude, however, that, as a matter of law, Fons did not make an offer to Garner to

767

provide her with liability insurance, and therefore, that no contract for liability insurance was formed.

The Malones claim that Fons entered into a contract with Garner to provide her with liability insurance. They base their claim on the fact that Fons charged Garner $14.29 a month for "insurance." They rely on a letter that Fons sent to Garner several months after Fons began renting to Garner which memorialized their oral agreement. It stated:

> The new payment for 1992 is now as of March 92: 800.

| | |
|----------|-----------|
| $575.71 | P & I |
| $ 14.29 | Insurance |
| $220.00 | Taxes |

$800.00

In order for a contract to exist there must be an offer, an acceptance and consideration. *See Flambeau Prods. Corp. v. Honeywell Info. Sys., Inc.*, 116 Wis. 2d 95, 112, 341 N.W.2d 655, 664 (1984). Apparently the Malones's argument is that: (1) the note is evidence of an offer, or perhaps an offer itself, on Fons's part to provide Garner with liability insurance in exchange for $14.29 a month; (2) Garner accepted the offer by paying her rent; and (3) the $14.29 constituted consideration. We conclude, however, that, as a matter of law, the note was neither an offer, nor evidence of an offer to provide Garner with liability insurance.

The Restatement (Second) of Contracts defines an offer as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and

will conclude it." RESTATEMENT (SECOND) OF CONTRACTS, § 24, at 71 (1979). "An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain." *Petersen v. Pilgrim Village*, 256 Wis. 621, 624, 42 N.W.2d, 273, 274 (1950); *see also* WILLISTON ON CONTRACTS, § 4:4, at 268–70 (4th ed. 1990) (An offer must be "sufficiently definite to lead the offeree to understand that a bargain is being proposed and how the offeree may conclude the bargain.").

▬▬

There is no evidence that Fons "manifested a willingness to enter into a bargain" with Garner, whereby he would provide her with liability insurance. According to Fons, the insurance portion of Garner's monthly payments was for fire insurance to protect Fons's investment in the rental property. Fons and Garner never discussed liability insurance. Fons never made any oral statements to Garner offering to provide her with liability insurance. In fact, Garner testified she did not know what liability insurance was at the time she rented the property. Further, the letter from Fons to Garner, standing alone, is not definite enough in its terms to constitute an offer. The letter does not mention the term "liability," nor does it explain the reference to insurance. Therefore, there was no offer to provide Garner with liability insurance, and consequently, there was no contract. And, of course, without a contract, the Malones's final third-party beneficiary claim fails.

### III. CONCLUSION.

In conclusion, under *Gonzales*, Fons may not be held liable for common-law negligence for the actions of his tenant's dog. Fons was not a "harborer" of his ten-

ant's dog, as that term is used in § 174.001(5), STATS., and therefore cannot be held liable under § 174.02, STATS. Finally, Fons did not enter into a contract to provide Garner with liability insurance, and therefore, Sarah was not the third-party beneficiary of any such contract. Therefore, the trial court's grant of summary judgment is affirmed.

*By the Court.*—Judgment affirmed.

FINE, J. *(dissenting)*. The majority holds that when a landlord is on notice that his or her tenant is keeping a dangerous dog on the rented premises in violation of the lease, the landlord is not responsible if that dog attacks and injures someone within the foreseeable zone of danger even though the parents of an earlier victim had warned the landlord before the latest attack that the dog was dangerous and asked the landlord to make his tenants get rid of the dog.[1] I respectfully dissent.

Under the facts as alleged in this case, I believe that Joseph Fons, the landlord here, had a duty to enforce the "no pets" clause in the lease after he learned that his tenants were harboring a dangerous dog. "A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone." *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 484, 214 N.W.2d 764, 766 (1974). This is true "even though the

---

[1] The plaintiffs contend that the assertions of fact in this sentence are true. Although the defendants argue that they are not, this case was dismissed on summary judgment. We must, as did the trial court, accept the assertions of fact as correct in determining whether the defendants are entitled to judgment as a matter of law.

nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act." *Id.*, 62 Wis. 2d at 483, 214 N.W.2d at 766. Here, although the ultimate victim was unknown, the nature of the harm was patent.

Under Wisconsin law, a tortfeasor is liable to an injured plaintiff "if there is an unbroken chain of causation from the negligent act to the injury sustained and if the negligence is a substantial factor," unless public-policy considerations intervene. *Howard v. Mt. Sinai Hospital, Inc.*, 63 Wis. 2d 515, 523a–523b, 219 N.W.2d 576, 577 (1974) (per curiam, on reconsideration). There was such an unbroken chain here. The crux of the public-policy analysis is whether the imposition of liability would "shock the conscience of society." *Rolph v. EBI Companies*, 159 Wis. 2d 518, 534, 464 N.W.2d 667, 672–673 (1991). Imposition of liability here is well within the ambit of the doctrine announced by *A.E. Investment Corp.*, and, in my view, is not barred by public-policy considerations.

The majority, as did the trial court, reads *Gonzales v. Wilkinson*, 68 Wis. 2d 154, 227 N.W.2d 907 (1975), as barring the plaintiffs' action. Accepting for the sake of this discussion the majority's conclusion that the portion of *Gonzales* upon which it relies is a "holding" and not *dictum*, I do not agree that *Gonzales* is dispositive under the facts of this case that we must accept as true.

As the majority recognizes, *Gonzales* was an attractive-nuisance case. *Id.*, 68 Wis. 2d at 155–156, 227 N.W.2d at 909. In *Gonzales*'s passing reference to the landlord's common-law negligence, it noted, without even discussing the broad principle it had so recently set out in *A.E. Investment*, that the landlord had no "dominion over the dog," and that any liability under a common-law negligence theory rested merely

on "the ownership and control of the premises," which, by themselves, did not create a duty to the plaintiffs. *Id.*, 68 Wis. 2d at 158, 227 N.W.2d at 910. Here, in contrast, the dog should not have been on the premises. The dog would not have been on the premises if Fons had enforced the lease and heeded the warning given to him by the parents of the earlier victim. Unlike the situation in *Gonzales,* the plaintiffs here are not seeking to hold Fons liable as "an insurer for the acts of his tenant," *ibid.*, but, rather, for refusing to enforce the lease provision under circumstances when it was "foreseeable" that his refusal "may cause harm to someone," *A.E. Investment,* 62 Wis. 2d at 484, 214 N.W.2d at 766 ("A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone.").

Although I agree with the majority that Fons is not liable under § 174.02(1), STATS., or under the plaintiffs' third-party-beneficiary theory, I would reverse and remand for trial on the common-law negligence claim.