[Cite as *Ward v. Humble*, 2022-Ohio-3258.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| SIMON A. WARD, et al. | : | |
| | : | |
| Plaintiffs-Appellants | : | Appellate Case No. 29417 |
| | : | |
| v. | : | Trial Court Case No. 2021-CV-631 |
| | : | |
| ZACHARY M. HUMBLE, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellants | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 16th day of September, 2022.

. . . . . . . . . .

THOMAS J. INTILI, Atty. Reg. No. 0036843, 2300 Far Hills Avenue, Dayton, Ohio 45419
    Attorney for Plaintiffs-Appellants

STEPHEN J. PATSFALL, Atty. Reg. No. 0012271 & JACOB E. BISCHOFF, Atty. Reg.
No. 0100245, 431 Ohio Pike Suite 305, Cincinnati, Ohio 45255
    Attorneys for Defendants-Appellants

. . . . . . . . . . . .

LEWIS, J.

**{¶ 1}** Plaintiffs-Appellants Simon Ward and Katie Ward (collectively, the Wards) appeal from the trial court's grant of summary judgment in favor of Defendant-Appellee Faler Acquisitions Ltd. ("Faler"). The Wards contend that the trial court erred in finding as a matter of law that Faler was not liable to the Wards under R.C. 955.28 or at common law for the injuries they sustained from a dog owned by one of Faler's tenants. For the reasons that follow, we affirm the trial court's judgment.

I.     Facts and Course of Proceedings

**{¶ 2}** The Wards live on Lewiston Road in Kettering. The northern end of their property is contiguous with the southern end of property owned by Faler. In December 2020, Zachary Humble and his girlfriend, Joanne Lauterbach, were renting the property owned by Faler. Humble owned a dog named Roxie, and Lauterbach owned a dog named Haven. Both dogs were pitbulls. The Wards allege that, on December 4, 2020, Humble's dog, Roxie, attacked the Wards' dog. According to the Wards, Roxie displaced a plank in the Wards' privacy fence and grabbed hold of one of the legs of the Wards' dog. Roxie then tried to pull the Wards' dog underneath the privacy fence. The Wards attempted to rescue their dog, which resulted in both of the Wards being bitten by Roxie.

**{¶ 3}** Humble and Lauterbach had signed a lease before moving in to Faler's property. The lease contained a provision that stated, in part: "No pets or animals will be permitted on the Premises without Landlord's prior written consent, which consent may be withheld for any reason or no reason at all." Prior to moving in, Humble and Lauterbach were given permission by Faler to keep the dogs on the property. Also, at

the request of the tenants, Faler added some fencing to the northern portion of its property so that the yard would be enclosed. Faler did not add any fencing between the southern border of its property and the Ward's privacy fence.

{¶ 4} The Wards commenced an action against Humble, Lauterbach, and Faler in February 2021. The Wards alleged the following four claims against each of the defendants: strict liability pursuant to R.C. 955.28, negligence per se for violating R.C. 955.28; common law negligence; and loss of consortium. After the defendants filed their answers to the complaint and the parties conducted discovery, Faler moved for summary judgment on the Wards' claims. According to Faler, it could not be found liable on the dog bite claim, because it was not a harborer of Roxie and it had no knowledge of any vicious propensities of Roxie prior to the December 4, 2020 incident. The Wards opposed the motion, contending that there were genuine issues of material fact regarding whether Faler was a harborer of Roxie and whether Faler's failure to fence in the southern border of its property was negligent and caused the Wards' injuries.

{¶ 5} The trial court granted Faler's motion for summary judgment on February 16, 2022. According to the trial court, the Wards could not prevail on their claims, as a matter of law, because Faler was not a harborer of Roxie. Further, the trial court found that there was no genuine issue of material fact that Faler did not know Roxie was vicious prior to the alleged attack on the Wards. Finally, the trial court found that the Wards had not alleged a traditional negligence claim in their amended complaint, but rather had alleged only a negligence claim under common law.

{¶ 6} The Wards voluntarily dismissed, without prejudice, their claims against the

remaining defendants and filed a timely notice of appeal from the trial court's decision granting Faler's motion for summary judgment.

II.      The Trial Court Did Not Err By Granting Summary Judgment to Faler.

{¶ 7} In their sole assignment of error, the Wards contend:

THE TRIAL COURT ERRED BY ENTERING SUMMARY JUDGMENT FOR DEFENDANT-APPELLEE FALER ACQUISITIONS, LTD.

{¶ 8} Appellate review of a trial court's ruling on a summary judgment motion is de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42, citing *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162, 703 N.E.2d 841 (4th Dist.1997). De novo review " 'means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.' " *Riverside v. State*, 2016-Ohio-2881, 64 N.E.3d 504, ¶ 21 (2d Dist.), quoting *Brewer v. Cleveland City Schools Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co., Inc.*, 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980). On such review, we do not grant deference to the trial court's determinations. *Powell v. Rion*, 2012-Ohio-2665, 972 N.E.2d 159, ¶ 6 (2d Dist.), citing *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶ 9} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a

matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), citing *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus. The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Id.* at 292-293.

{¶ 10} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings. *Id.* at 293. Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

### a. Liability Under R.C. 955.28

{¶ 11} Two of the claims brought by the Wards against Faler were claims based on R.C. 955.28(B). That section provides, in part:

> The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the

time, was committing or attempting to commit criminal trespass or another criminal offense other than a minor misdemeanor on the property of the owner, keeper, or harborer, or was committing or attempting to commit a criminal offense other than a minor misdemeanor against any person, or was teasing, tormenting, or abusing the dog on the owner's, keeper's, or harborer's property.

R.C. 955.28(B)

{¶ 12} In order to prevail in a dog bite case under R.C. 955.28, the plaintiff must prove the following: (1) the defendant is an owner, keeper, or harborer of the dog; (2) the actions of the dog were the proximate cause of damage; and (3) the monetary amount of damages. *Flint v. Holbrook*, 80 Ohio App.3d 21, 25, 608 N.E.2d 809 (2d Dist.1992), citing *Hirschauer v. Davis*, 163 Ohio St. 105, 109, 126 N.E.2d 337 (1955). The trial court found as a matter of law that Faler was not an owner, keeper, or harborer of Roxie. An owner is the person to whom the dog belongs. The keeper has physical charge or care of the dog. *Flint* at 25, citing *Garrard v. McComas*, 5 Ohio App.3d 179, 182, 450 N.E.2d 730 (10th Dist.1982). It is undisputed that Faler was not an owner or keeper of Roxie. However, the Wards contend that there was a genuine issue of material fact with regard to whether Faler was a harborer of Roxie.

{¶ 13} Ohio courts have consistently defined "harborer" as someone who has possession and control of the premises where the dog lives and silently acquiesces to the dog's presence. *Vallejo v. Haynes*, 2018-Ohio-4623, 124 N.E.3d 322, ¶ 15 (10th Dist.), citing *Hilty v. Topaz*, 10th Dist. Franklin No. 04AP-13, 2004-Ohio-4859, ¶ 8. Generally, a lease transfers both possession and control of the leased premises to the tenant.

*Vallejo* at ¶ 16, citing *Hilty* at ¶ 9. Consistent with this general principle, Section 2.3 of the lease between Faler and Lauterbach and Humble stated that "Landlord will exercise best efforts to deliver possession of the Premises upon commencement of this Lease[.]" Similarly, Section 4.1 of the Lease states that "[u]pon vacating, Tenant agrees to return the Premises to Landlord in the same of [sic] better condition as when received, reasonable wear and tear excepted."

{¶ 14} There is no evidence in the record that Faler did not deliver possession of the premises to its tenants. Therefore, the Wards were unable to prove the necessary possession element, which precludes Faler from being a harborer of Roxie. Similarly, there was no evidence of record that Faler retained control over the property while Lauterbach and Humble lived there. Rather, "[w]hen the property at issue consists of a single-family residence situated on a normal-sized city lot, there is a presumption that the tenants possess and control the entire property." *H.W. v. Young*, 2020-Ohio-1384, 153 N.E.3d 807, ¶ 24 (8th Dist.), quoting *Brown v. Terrell*, 2018-Ohio-2503, 114 N.E.3d 783, ¶ 13 (9th Dist.). Therefore, Faler did not retain the necessary amount of possession and control of the property to be considered a harborer under R.C. 955.28(B).

{¶ 15} In support of its position that Faler was a harborer of Roxie, the Wards point to section Section 3.2 of the Lease, which provides, in part: "No pets or animals will be permitted on the Premises without Landlord's prior written consent, which consent may be withheld for any reason or no reason at all." According to the Wards, this provision ensured that Faler retained control of the premises with regard to whether a dog lived there. But we do not agree that having control over whether a dog is allowed to live on

the premises with its owners is sufficient to transform a landlord into a harborer. If we were to hold as the Wards contend, we would be ignoring the necessary possession element to being a harborer and would be creating a fiction that a landlord retains day-to-day control over a dog despite not being present at or in possession of the premises on which the dog lives.

{¶ 16} The Wards cite *Hill v. Hughes*, 4th Dist. Ross No. 06CA2917, 2007-Ohio-3885, in support of their position that the trial court erred in finding as a matter of law that Faler was not a harborer of Roxie. In *Hill*, a father owned three homes on the corner of two connecting streets. He lived in a home on one of the properties, operated a business on the second property, and rented the third property to his son pursuant to an oral, month-to-month tenancy. *Id.* at ¶ 3. His son owned a dog, which lived with the son on the third property. One night, the son's cousin and his family were visiting the property on which the son lived. At some point, the son's dog attacked and injured the cousin's son. *Id.* at ¶ 4.

{¶ 17} The cousin sued both the father and son, alleging that the father had sufficient control over the dog or the premises on which it was kept to be deemed its keeper or harborer. *Id.* at ¶ 7. The trial court granted summary judgment to the father, because he had no control over either the dog or the property. *Id.* at ¶ 8. But the Fourth District disagreed. The Fourth District noted that there was no written lease that spelled out the rights and responsibilities of each party, which the court stated raised questions about whether the father had more possession and control over the rental property than a typical landlord. *Id.* at ¶ 19. Even more important to the court, however, was the

father's deposition testimony in which he stated that he had the authority to make his son get rid of the dog if the father so desired. According to the Fourth District, "[a]s long as [the father] retained that degree of possession and control over the premises, a genuine issue of material fact remains whether he 'harbored' [the dog] for purposes of R.C. 955.28 and the common law negligence principles." *Id.* at ¶ 20.

{¶ 18} The *Hill* case has been distinguished several times and described as an outlier by at least one court. *See E.F. v. Seymour*, 2018-Ohio-3946, 120 N.E.3d 459, ¶ 31 (10th Dist.) ("this court previously identified *Hill* * * * as an outlier to established precedent in Ohio"). We agree that the *Hill* case is an outlier and should not be followed in the typical dog bite case involving a landlord and tenant where the landlord has given up possession and control of the premises.

{¶ 19} The Wards also contend that the trial court erred in finding that the dog attack did not occur in a common area. According to the Wards, "the evidence is abundantly clear that the attack occurred on the Wards' property, not the Faler property, which is common to the Wards and to a public utility possessing an easement to that area, i.e. the area immediately north of the Ward's privacy fence." Brief of Appellants, p. 11. Thus, according to the Wards, the fact that the attack occurred in an area "common" to the Wards and a third-party somehow shows that the attack occurred on an area controlled or possessed by Faler.

{¶ 20} But the point of potentially holding a landlord liable for injuries that occur in a common area is that the common area is actually on the land owned and rented by the landlord and under the landlord's control. Indeed, one of the duties owned by a landlord

to its tenants is to "[k]eep all common areas of the premises in a safe and sanitary condition." R.C. 5321.04(A)(3). A parking lot on the landlord's property is an example of a common area. *Rawlings v. Springwood Apts. of Columbus, Ltd.*, 2018-Ohio-4845, 125 N.E.3d 312, ¶ 40 (10th Dist.), citing *Lilly v. Bradford Invest. Co.*, 10th Dist. Franklin No. 06AP-1227, 2007-Ohio-2791, ¶ 24. But it would not make sense to apply a common area theory of liability to a landlord that does not own or have any control over that "common area."

{¶ 21} The trial court correctly found that the injuries sustained by the Wards did not occur in a common area controlled or possessed by Faler. Therefore, as a matter of law, Faler was not a harborer of Roxie pursuant to R.C. 955.28.


### b. Common Law Negligence

{¶ 22} The Wards also raised a common law negligence claim against Faler. "Under common law, a plaintiff suing for injuries inflicted by a dog must show that the defendant owned or harbored the dog, that the dog was vicious, that the defendant knew of the dog's viciousness, and that the defendant was negligent in keeping the dog." *Flint*, 80 Ohio App.3d at 25-26, 608 N.E.2d 809, citing *McIntosh v. Doddy*, 81 Ohio App. 351, 77 N.E.2d 260 (1st Dist.1947). As the trial court found, not only did the Wards not create a genuine issue of material fact that Faler was a harborer, but the undisputed evidence showed that Faler had no knowledge that Roxie was vicious prior to the dog bites at issue here.

{¶ 23} But the Wards contend that there is no requirement that they must show

Faler was a harborer in order to prevail on their common law negligence claim. The Wards cite *Applegate v. Pizzurro*, 10th Dist. Franklin No. 86AP-1084, 1987 WL 12724 (June 9, 1987), in support of this proposition. In *Applegate*, the two defendants, a father and a son, jointly owned property. *Id.* at *1. The father rented his half interest in the home to his son, who in return paid his father rent. The son had a dog on the premises that he owned. However, the father occasionally took care of the dog and visited the property periodically and fed the dog. *Id.* The property had a gated yard. The plaintiff was attacked by the dog when the dog jumped up on the gate and the latch to the gate gave way, allowing the dog to escape the yard and attack the plaintiff. *Id.* The father had previously repaired the gate, and the plaintiff alleged that the repairs had been performed negligently. *Id.* at *2.

{¶ 24} According to the Tenth District, "Plaintiff's contentions against [the father] under common law negligence exceed the bounds of an action for dog bite against the owner or keeper of a dog. Accordingly, plaintiff need not demonstrate that [the father] was an owner or keeper of the dog under a common law negligence claim for negligent repair of the gate[.]" *Id.* The defendant father contended that the son had the duty to repair the gate. But the court concluded "even if [the father] had no duty to repair the gate on the premises, in volunteering to do so with others reasonably relying on that undertaking, he was required to repair the gate in a non-negligent manner." *Id.*

{¶ 25} We believe *Applegate* is inapposite to the situation involving the Wards and Faler. Applegate involved a unique set of facts involving a close familial relationship between a father and son and an oral lease. Further, the father performed work on the

gate to the yard that arguably was performed negligently and led to the injury to the plaintiff. Unlike the *Applegate* case, the facts before us are more in line with the vast majority of Ohio cases that have found no common law duty on the part of a landlord to take any action to prevent dog bite injuries caused by a tenant's dog, absent prior knowledge of the tenant's dog's being vicious.

{¶ 26} Further, counsel for the Wards conceded at oral argument that there was no general duty on Faler to fence in the entire yard. However, counsel contends that once Faler fenced in a portion of its yard, it acted negligently by not fencing in the remainder of the yard. In support of this proposition, the Wards contend that the failure to fence in the remainder of the yard was the proximate cause of the Wards' injuries and that it was foreseeable that the injuries would occur. Therefore, Faler had a duty to finish fencing in the yard prior to the attack. We disagree. The facts presented to the trial court did not establish any extra duty on Faler to perform any action beyond what is typically required of a landlord. Faler did not have any knowledge of any violent tendencies of Roxie that might warrant a need to build a fence in addition to the Wards' privacy fence.

{¶ 27} Counsel for the Wards also contended at oral argument that the insurance provisions in the lease between Faler and its tenants created a duty on the part of Faler to at least buy public liability insurance for its tenants. And the failure to buy that liability insurance constituted negligence. This argument was not made at the trial court level or in the appellate briefs. Even if it had been, this argument does not have merit. First, the lease provides that Faler may provide insurance if its tenants do not. The lease did

not require Faler to do so. Second, even if Faler ultimately decided to exercise its option to purchase insurance under the lease, there was no requirement that it purchase public liability insurance. Finally, while public liability insurance, in hindsight, seems like a very good idea, especially for the tenants, a failure to make a good economic decision in this context does not qualify as the tort of negligence under which the Wards could recover.

{¶ 28} We have previously acknowledged that "[a]ttempts have been made to broaden liability to non-occupant owners of premises where a dog is located, perhaps because landlords may have greater assets to satisfy judgments." *Schneider v. Kumpf*, 2016-Ohio-5161, 58 N.E.3d 1220, ¶ 39 (2d Dist.), citing *Hill* as an example of such an attempt. But these attempts have been almost universally rejected unless the plaintiff can show a level of possession and control that normally is not present in the typical landlord-tenant situation or some prior knowledge on the part of the landlord about the dog's viciousness. Absent these types of facts, we similarly reject the Wards' attempts to broaden liability here.

{¶ 29} The assignment of error is overruled.

III.    Conclusion

{¶ 30} Having overruled the Wards' sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Thomas J. Intili
Stephen J. Patsfall
Jacob E. Bischoff
Stephen P. O'Keefe
Paul B. Roderer, Jr.
Hon. Mary E. Montgomery