[Cite as *Hipshire v. Oakwood Village*, 2024-Ohio-5948.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

L.H. HIPSHIRE BY AND THROUGH
NATURAL MOTHER KELLY

    Appellant

v.

OAKWOOD VILLAGE ET AL.

    Appellees

:
:
:
:
:
:
:
:
:
:
:

C.A. No. 30045

Trial Court Case No. 2021 CV 03096

(Civil Appeal from Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on December 20, 2024

. . . . . . . . . . .

JOHN A. SMALLEY, Attorney for Appellant

DAVID G. KERN & AMY L. BUTLER, Attorney for Appellees

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Plaintiff-Appellant, L.H., a minor, by and through his natural mother and legal guardian, Kelly Hipshire ("Hipshire"), appeals from a summary judgment rendered against him on his claim for damages resulting from a dog bite. For the reasons set forth below, we reverse and remand.

## I. Facts and Course of Proceedings

**{¶ 2}** The facts in this dog-bite case were not in dispute. L.H. suffered injuries when he was bitten by a dog owned by the family of defendant Beth Anne Lake. At the time of the incident, the Hipshire and Lake families both resided in Oakwood Village, a manufactured-home community owned by defendant-appellee Sun Secured Financing, LLC ("Sun"). Sun permitted residents in the community to have dogs but had a list of "restricted breeds" that residents were not allowed to have. Lake's dog was not a breed on the restricted breed list. There was no dispute that residents were permitted to have their dogs in the common areas of the community, including a playground area.

**{¶ 3}** On October 6, 2020, L.H. went to the playground area. Lake's son was there with the family dog. The dog was on a leash tied to a swing. L.H. approached the dog and patted it on its back and head. The dog then bit L.H. on the head. L.H. was taken to a local hospital and admitted. He required more than 50 stitches to repair the bite wound.

**{¶ 4}** In 2021, Hipshire filed a complaint against Sun, Lake, and the Ohio Department of Medicaid.[1] The complaint alleged that Lake and Sun were strictly liable for the injury under R.C. 955.28. Service was perfected on Lake, but she failed to answer. The court granted a default judgment against her.

**{¶ 5}** Hipshire filed a motion for summary judgment on her strict liability claim.

---

[1] The State of Ohio, Department of Medicaid was added as a defendant due to the possibility of a subrogation claim.

Sun then filed its own motion for summary judgment, arguing that it was not liable under R.C. 955.28. Sun made the same argument in reply to Hipshire's summary judgment motion and added that, because the dog in question was a service animal, federal law prohibited Sun from banning it from common areas. The court overruled Hipshire's summary judgment and rendered summary judgment in favor of Sun.

**{¶ 6}** Hipshire appeals.

## II. Summary Judgment Standards

**{¶ 7}** In Ohio, the law concerning summary judgment and applicable review standards is well-settled. "Summary judgment is appropriate if (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Duncan v. Mentor City Council*, 2005-Ohio-2163, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶ 8}** When reviewing summary judgment decisions, appellate courts apply a de novo standard of review. *A.J.R. v. Lute*, 2020-Ohio-5168, ¶ 15. As such, an appellate court independently reviews the evidence without deference to the trial court's findings. *Smathers v. Glass*, 2022-Ohio-4595, ¶ 30, citing *Wilmington Savs. Fund Soc., FSB v. Salahuddin*, 2020-Ohio-6934, ¶ 20 (10th Dist.). Thus, a reviewing court "examines the evidence available in the record, including deposition or hearing transcripts, affidavits,

stipulated exhibits, and the pleadings, *see* Civ.R. 56(C), and determines, as if it were the trial court, whether summary judgment is appropriate." *Id.*, citing *Wilmington* at ¶ 19.

### III. R.C. 955.28

{¶ 9} "R.C. 955.28 . . . imposes strict liability upon the owner, keeper, or harborer of a dog 'for any injury, death, or loss to person or property that is caused by the dog' unless the injured individual was trespassing or committing a criminal offense other than a minor misdemeanor on the property." *Beckett v. Warren*, 2010-Ohio-4, ¶ 10, quoting R.C. 955.28(B). This "statutory cause of action 'eliminate[s] the necessity of pleading and proving the keeper's [owner's or harborer's] knowledge' of the dog's viciousness." *Id.* at ¶ 11, quoting *Bora v. Kerchelich*, 2 Ohio St.3d 146 (1983). "Consequently, in an action for damages under R.C. 955.28, the plaintiff must prove (1) ownership or keepership [or harborship] of the dog, (2) that the dog's actions were the proximate cause of the injury, and (3) the damages." *Id.*, citing *Hirschauer v. Davis*, 163 Ohio St. 105 (1955), paragraph three of the syllabus.

### IV.    Analysis

{¶ 10} We will consider Hipshire's two assignments of error together, as they involve the same issue: whether Sun is strictly liable for the injuries L.H. sustained as a result of the dog-bite. Hipshire's first and second assignments of error state:

> THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT-
> APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON L.H.'S R.C.

955.28 CLAIM.

THE TRIAL COURT ERRED IN DENYING THE PLAINTIFF-APPELLANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF DEFENDANT-APPELLEE'S LIABILITY ON THE R.C. 955.28 CLAIM.

{¶ 11} Under the first assignment of error, Hipshire contends that the trial court incorrectly focused on whether Sun had prior notice that Lake's dog had aggressive tendencies, as this is irrelevant to strict liability for dog bites under R.C. 955.28. Hipshire also argues that there were, at least, factual issues regarding whether Sun was a harborer of the dog. Under the second assignment of error, Hipshire alternatively asserts that, as a matter of law, Sun, as a harborer of the dog, was strictly liable for her son's injuries.

{¶ 12} In granting summary judgment to Sun, the trial court concluded that Sun had not "silently acquiesce[d]" in the dog's presence in the common areas, because Sun had "implemented rules for pet owners that appear to be directed at protecting the safety of tenants such as Plaintiff and avoiding accidents like the one at issue in this case."[2] The court also noted that Sun did not have either prior notice or a reason to believe the dog was aggressive or dangerous.

{¶ 13} Having reviewed the applicable law, we agree with Hipshire that the trial court was incorrect to the extent that it focused on whether Sun had prior notice of the dog's aggressive tendencies. While prior notice can be a factor in a negligence claim, it

---

[2] The only "rule" cited by the trial court was Sun's implementation of a restricted breed prohibition. On this record, the only other "rule" we can discern was the requirement that dogs be leashed while in common areas of the property.

is irrelevant to a strict liability analysis under R.C. 955.28. *Beckett*, 2010-Ohio-4, ¶ 11; *McIntosh v. Doddy*, 81 Ohio App. 351, 356 (1st Dist. 1947) (evidence as to dog's viciousness or owner's knowledge of such is irrelevant and inadmissible for purposes of strict liability). Instead, the only pertinent issue in this context was whether Sun could be considered a "harborer."

{¶ 14} "Ohio courts have consistently defined 'harborer' as someone who has possession and control of the premises where the dog lives and silently [or otherwise] acquiesces to the dog's presence." *Ward v. Humble,* 2022-Ohio-3258, ¶ 13 (2d Dist.), citing *Vallejo v. Haynes,* 2018-Ohio-4623, ¶ 15 (10th Dist.), citing *Hilty v. Topaz,* 2004-Ohio-4859, ¶ 8 (10th Dist.). This definition has been adopted by Ohio Jury Instructions (OJI), which define "harborer" as "a person who has possession and control of the premises where the dog lives and acquiesces, silently or otherwise, to the dog's presence." Ohio Jury Instructions CV 409.01. This definition creates a distinction between a dog's keeper (defined as someone who has control over the dog) and a harborer, where "the focus shifts from possession and control of the dog to possession and control of the premises where the dog lives." *Flint v. Holbrook,* 80 Ohio App.3d 21, 25 (2d Dist. 1992) quoting *Godsey v. Frantz,* 1992 WL 48532, *3 (6th Dist. Mar. 13, 1992).

{¶ 15} The issue here, then, was how to apply the harborer definition to a dog-bite that occurred in the common area of a manufactured-home community where, as in an apartment complex or a similar facility, tenants live in separate homes or apartments but share common spaces. Common areas are spaces "such as sidewalks, parking lots, foyers, and hallways which are under the control of the lessor and which are reasonably

necessary to the use and enjoyment of the leased property." *Brown v. Terrell,* 2018-Ohio-2503, ¶ 13 (9th Dist.), citing *Hau v. Gill,* 1999 WL 492633, *5 (9th Dist. July 14, 1999). Common areas are in the lessor's possession because such "land [is] owned and rented by the landlord and under the landlord's control." *Ward* at ¶ 20. "Indeed, one of the duties [owed] by a landlord to its tenants is to '[k]eep all common areas of the premises in a safe and sanitary condition.' " *Id.,* quoting R.C. 5321.04(A)(3).

{¶ 16} Based upon the definition of "harborer" adopted by Ohio courts (including this court), a landlord who possesses and controls a common area and permits tenants' dogs to occupy that space is a harborer during a dog's presence in the common area. In this circumstance, a landlord is strictly liable for an injury caused by a dog while in a common space absent a statutory exception (not present here) or the dog's causing injury to the dog's keeper or owner. *Weisman v. Wasserman,* 2018-Ohio-290, ¶ 10 (8th Dist.).[3] It was not disputed that Sun owned and controlled the common area playground and that tenants' dogs were allowed in the playground. As such, Sun was strictly liable for the injuries to L.H. caused by the dog bite.

{¶ 17} This conclusion is unaffected by Sun's rule that a tenant's dog must be on a leash when it is in a common area. In our opinion, the leash requirement was simply not relevant to a R.C. 955.28 strict liability analysis on this record. A dog's owner or

---

[3] A common area is not invariably in a landlord's possession and control. For instance, *Williams v. Buchner,* 2023-Ohio-1293, ¶ 17 (8th Dist.), concluded that, because there was no evidence the landlord "retained any possession and control over a yard shared by tenants to a duplex home," the landlord was not a harborer of a tenant's dog when the dog, while occupying the duplex's shared yard, caused injury to the plaintiff as he walked on the sidewalk in front of the home.

keeper is not shielded from strict liability if the dog, while leashed, causes injury to a person. And, because the statute treats a dog's harborer in the same fashion as an owner or keeper, a landlord who is also a harborer because of a dog's permitted presence in a common area is also not absolved from strict liability based on a leash requirement.[4]

{¶ 18} Additionally, Sun argues that it is protected from liability because Lake's dog was a service animal and, under federal law, service animals cannot be excluded from common areas. In support, Sun claims that Lake's daughter had a disability and that the dog was her service animal. Sun cites to a Notice issued by the U.S. Department of Housing and Urban Development which set forth guidance for "Assessing a Person's Request to Have an Animal as a Reasonable Accommodation Under the Fair Housing Act." HUDAsstAnimalNC1-28-2020.pdf. This argument is unavailing.

{¶ 19} First, we find no competent, admissible evidence to demonstrate that Lake's daughter had a disability for which she required a service animal or that the dog was in fact a service animal. The only evidence regarding the dog's use as a service animal came from L.H.'s mother and Sun's on-site property manager, neither of whom provided any foundation for their assertion. *See* Evid.R. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support that the witness has personal knowledge of the matter."). Indeed, the trial court did not reach this issue, presumably because it was not properly established.

---

[4] Arguably, the analysis would be different if the dog had not been leashed when the bite occurred. In this circumstance, Sun – assuming its enforcement of the leash requirement (which is disputed) – would not have acquiesced in the dog's unleashed presence in the playground. But the dog was leashed when the bite occurred, and Sun does not argue and the record does not otherwise reflect that the leash rule was being violated when the bite occurred.

{¶ 20} Further, the record established that Sun allowed dogs that were not on the restricted breed list to occupy the playground and other common areas irrespective of the federal regulation. Thus, the service animal regulation had no bearing on Sun's acquiescence to the dog's presence at the playground. Moreover, when the incident occurred, the dog was not acting as a service animal, as it was not in the company of Lake's daughter.

{¶ 21} We recognize that our conclusion that Sun was strictly liable puts landlords in a difficult position. But, in our view, it is the conclusion compelled by the facts surrounding the dog bite, the definition of a "harborer," and the strict liability imposed by R.C. 955.28. Accordingly, both of Hipshire's assignments of error are sustained.

## IV. Conclusion

{¶ 22} Hipshire's assignments of error being sustained, the judgment of the trial court is reversed, and the matter is remanded to the trial court with instructions to grant Hipshire's motion for partial summary judgment.

LEWIS, J., concurs.

WELBAUM, J., dissents:

{¶ 23} I very respectfully dissent from the majority's decision to reverse the summary judgment granted to Sun. My position is based on an analysis of the historical meaning of "harborer" in Ohio's dog-bite statutes.

{¶ 24} As a preliminary point, I agree with the majority that the trial court erred in considering whether Sun knew the dog was aggressive. This could be a factor in

negligence claims but is irrelevant to a strict liability analysis under R.C. 955.28. *E.g.*, *McIntosh v. Doddy*, 81 Ohio App. 351, 356 (1st Dist. 1947) (evidence as to a dog's viciousness or an owner's knowledge of such is irrelevant and inadmissible for purposes of strict liability). The trial court's error had no impact, however, because it also found Sun was not a harborer of the dog. This was correct, because Sun's rules contradicted any claim that it had silently acquiesced in the dog's presence in common areas. Ordinarily, harboring is a jury issue, but summary judgment may be granted if the undisputed facts show a defendant is not a harborer. *E.F. v. Seymour*, 2018-Ohio-3946, ¶ 20 (10th Dist.); *Weisman*, 2018-Ohio-290, ¶ 4 (8th Dist.).

{¶ 25} Turning to statutory analysis, a long-standing principle in Ohio law is that R.C. 955.28 is to be construed strictly. *Pulley v. Malek*, 25 Ohio St.3d 95, 97 (1986), citing *Hirschauer v. Davis*, 163 Ohio St. 105 (1955), paragraph two of the syllabus. As originally enacted in 1900, R.S. 4212-2 provided for joint and several liability of an "owner, owners or harborers of any animal of the dog kind that chases, worries, injures, or kills any sheep, lamb, goat, kid, animal or person." *Kleybolte v. Buffon*, 89 Ohio St. 61, 64-65 (1913). *See also McIntosh* at 353.

{¶ 26} By the time *Kleybolte* was decided in 1913, the statute had been recodified as G.C. 5388 and contained the same wording concerning an "owner" or "harborer" of a dog. *Kleynote* at 64; *see also Lisk v. Hora*, 109 Ohio St. 519, 522 (1924). These statues were in derogation of the common law, as they eliminated scienter. *Kleybolte* at 66. This is why they have been strictly construed.

{¶ 27} In 1951, G.C. 5388 was recodified as R.C. 955.28. This version eliminated

the term "harborer" and instead imposed liability on an "owner or keeper" of a dog. *See Hirschauer*, 163 Ohio St. at 107. In *Hirschauer*, the court stated that the amendment was "without substantial change" in the statute. *Id.* Before the 1951 recodification and amendment, "harborer" had been given a dictionary definition as a transitive verb meaning: " 'To afford lodging to; to entertain as a guest; to shelter; to receive; to give refuge to; to contain.' " *Sengel v. Maddox*, 16 Ohio Supp. 137, 140 (C.P. 1945), quoting *Webster's Dictionary*. Although a further amendment occurred in 1953, the relevant wording of R.C. 955.28 concerning liability imposed on an "owner or keeper" remained the same. *See Warner v. Wolfe*, 176 Ohio St. 389, 391 (1964), and 1953 H. 1.

{¶ 28} In *Warner*, the Supreme Court of Ohio considered whether R.C. 955.28 had abrogated "the common law of Ohio with respect to liability of dog owners or harborers for damage or injury caused by a vicious dog," which was an issue that *Hirschauer* had not addressed. *Id.* at 390 and 391. The court found that R.C. 955.28, which recreated G.C. 5838, did not abrogate the common law cause of action. *Id.* at 391-393. During its discussion, the court did not comment on the change in wording to "keeper," but referred instead to "owners or harborers," apparently equating "keeper" with "harborer." *Id.* This was consistent with the approach of lower courts, which had equated these terms before the 1951 amendment. *See Ryan v. DeWalle*, 1977 WL 200726, *2 (10th Dist. Dec. 29, 1977) (referencing the pre-1951 statute and noting there appeared to be no legal difference between "harborer" and "keeper"). *See also Osborn v. Leach*, 2 Ohio Law Abs. 458 (2d Dist.1924).

{¶ 29} This view was also consistent with that of other jurisdictions, which had

equated keepers and harborers.  *See Steinberg v. Petta*, 114 Ill.2d 496, 501 (1986) (noting that Black's Law Dictionary had defined a keeper as a harborer).  Like Ohio, Illinois imposes strict liability and defines an " 'owner' as 'any person having a right of property in an animal, or who keeps or harbors an animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog to remain on any premises occupied by him or her.' "  *Horbrook v. Contreras*, 2022 IL App (1st) 211150, ¶ 25, quoting ILCS 5/2.16 (2020) (which contains the same language as the statute at issue in *Steinberg*).

{¶ 30} Like Ohio, Minnesota also imposes strict liability for damages caused by dog bites.  In its statue, " 'owner' includes any person harboring or keeping a dog." *Gilbert v. Christiansen*, 259 N.W.2d 896, 897 (Minn.1977).  Previously, the same court had approved a jury instruction which stated that:

> " . . . Harboring or keeping a dog means something more than a meal of mercy to a stray dog or the casual presence of a dog on someone's premises.  Harboring means to afford lodging, to shelter or to give refuge to a dog.  Keeping a dog, as used in the statute before us, implies more than the mere harboring of the dog for a limited purpose or time.  One becomes the keeper of a dog only when he either with or without the owner's permission undertakes to manage, control or care for it as dog owners in general are accustomed to do."

*Id.* at 897, quoting *Verrett v. Silver*, 244 N.W.2d 147, 149 (Minn. 1976).  (Other citation omitted.)

{¶ 31} While this jury instruction creates a slight distinction between a keeper and

a harborer, both indicate a substantial degree of responsibility, care, or control for the dog. In *Gilbert*, the plaintiff attempted to hold the corporate manager of her apartment complex strictly liable for a dog bite she received in her apartment from a neighbor's dog. The court rejected this claim, finding that the complex's establishment of rules and ability to exclude animals did not make it a harborer, nor did the fact that it derived economic benefit (increased fees for animals) from allowing animals. *Id.* at. 897-898. Regarding this point, the court stressed that: "Despite plaintiffs' attempt to demonstrate that the instant facts are unique, a judgment in their favor would render it difficult, either through unavailability or prohibitive cost, for prospective tenants with dogs to find housing." *Id.* at 898.

{¶ 32} Returning to Ohio law, the court of appeals in *Ryan* quoted the dictionary definition of "harborer" as " 'to entertain as a guest; to shelter; to give refuge; to indulge or cherish.' " *Ryan*, 1977 WL 200726, at *2 (10th Dist.). The court also quoted Black's Law Dictionary, 3d Edition, which said that " '[t]o harbor a dog involves the idea of protection, and of treating it as living at one's house, and undertaking to control its actions.' " *Id.* These definitions again implied a close relationship between a dog and its harborer.

{¶ 33} In 1987, the statutory wording of R.C. 955.28 was changed again to impose liability on an "owner, keeper, or harborer of a dog." *See* 1987 H. 352, eff. July 10, 1987. Before the 1987 amendment, the Eighth District Court of Appeals had rejected a strict liability claim against a landlord. Among other things, the plaintiff had argued that the landlord (an investment company) did not transfer the premise's possession to the dog's

owner because the company failed to obtain a certificate of occupancy. As a result, the plaintiff claimed that a principal/agent relationship existed between the landlord and tenant. *Trenka v. Cipriani Invest. Co.,* 1983 WL 2635, \*1 (8th Dist. Oct. 6, 1983). In this regard, the court stated that:

> Revised Code 955.281 holds only the owner or keeper of a dog liable for damages and appellee has not been shown to be either an owner or a keeper, nor a principal of an agent owner or keeper. Appellants failed to present anything showing appellee cared for, exercised control over, or *harbored* the dog - all key indicia of ownership or keeping. Appellee simply rented a house to Brockway and that was the extent of appellee's involvement in the incident. In a similar case, the owner of a trailer park was found not to be the owner or keeper of a tenant's dogs even though he had established rules for the maintenance of pets on the premises.

(Footnote omitted; emphasis added.) *Id.*, citing *Garrard v. McComas*, 5 Ohio App.3d 179 (10th Dist. 1983). Again, the court appeared to equate keepers and harborers.

**{¶ 34}** *Garrard* involved a trailer park where the plaintiff was bitten by a dog while attempting to obtain directions to her brother-in-law's trailer. The trial court granted summary judgment to the dog owner because the plaintiff had trespassed, and the primary issue on appeal was whether she was a licensee or a trespasser (and was, therefore, statutorily precluded from recovery). The court of appeals found factual issues on this point and reversed the grant of summary judgment. *Id.* at 180-182. A secondary issue concerned the summary judgment granted in favor of the trailer park's owner.

However, on this issue, the court of appeals affirmed, noting: "The fact that Spanner, as owner of the trailer park and lessor of the McComas' lot, established rules for the maintenance of pets on his property by his tenants did not make him the owner or keeper of McComas' dogs. The 'owner' is the person to whom the dogs belong and the 'keeper' is the one having physical charge or care of the dogs." *Id.* at 182.

{¶ 35} After R.C. 955.28 was amended in 1987, courts began to distinguish among the terms "owner," "keeper," and "harborer," although there was no historical basis for doing so (and no real difference in the result). *E.g., Godsey*, 1992 WL 48532, *3 (6th Dist.). In *Godsey*, the court noted that " '[t]he "owner" is the person to whom the dogs belong and the "keeper" is the one having physical charge or care of the dogs.' " *Id*. at *3, quoting *Garrar*d at 182. In discussing "harborer," however, *Godsey* relied on the definition of harborer used in *Sengel,* which was decided in 1945. Again, in 1945, the strict liability statute referred to liability of an "owner" or "harborer." *Sengel's* definition of harboring involved a person's direct actions concerning a dog, like affording it lodging, entertaining it as a guest, sheltering it, receiving it, giving it refuge, and containing it. *Id.*, citing *Sengel,* 16 Ohio Supp. at 140. This definition, like the definitions in *Ryan*, 1977 WL 200726, at *2 (10th Dist.), implied responsibility, care, or control, i.e., a direct or close relationship with an animal.

{¶ 36} In *Godsey*, the court noted *Sengel's* comment that "harboring" should be used generally and not limited just to the specific instances contained in the dictionary definition. *Godsey* at *3. The court also quoted *Sengel's* statement that " '[a] person who is in possession and control of the premises where the dog lives, and silently

acquiesces in the dog being kept there by the owner, can be held liable as a "harborer" of the dog.' "  *Id.*, quoting *Sengel* at paragraph two of the syllabus.   Given the facts in *Sengel* and *Godsey*, this made sense.

{¶ 37} For example, in *Sengel*, the plaintiff sued three people: a mother who owned a dog; the mother's husband; and their daughter, who owned the house in which they all lived.   The plaintiff was bitten while trying to separate his dog and the mother's dog, who were fighting.   After a bench trial, the court found in the husband's favor but found the mother and daughter liable to the plaintiff for the injury.   *Sengel*, 16 Ohio Supp. at 138-140.   Clearly, the mother was the dog's owner, so that was not an issue.   The issue concerning the daughter, who owned the house, was whether she had harbored the dog, i.e., "was in possession and control of the premises, where the dog lived."   *Id.* at 139.

{¶ 38} In addressing this point, the court noted disharmony among cases.   Some required "as an element that such person must in some way undertake to control the actions of the dog."   Others, however, held that "liability as a harborer or keeper is established if the owner of the premises knowingly permits the dog to live and make its home on such defendant's premises."   *Id.*   The court then cited cases from other jurisdictions in which defendants had been held to be "keepers or harborers."   *Id.*   These particular cases involved situations in which a defendant let family members or others (like servants) keep dogs in the family home or, in one instance, in which a father allowed his son's dog to frequent the father's business premises.   *Id.* at 139-140.

{¶ 39} After reviewing the dictionary definition of harboring and following the latter approach of considering whether the defendant permitted a dog to live on its premises,

the *Sengel* court found the daughter had harbored the dog, because she could have refused to permit the dog in her home or could have asked that it be removed; instead, the daughter let the dog remain and live in her home. *Id.* at 140. Again, this implied a direct relationship.

{¶ 40} Similarly, *Godsey* involved a situation in which a son lived in a house on a 100-acre farm that his father owned. The son had no lease and paid no rent. The father also owned a second farm that abutted the farm where the son lived and a third farm located on the same road. The son's dogs roamed freely around the first and third farms, and sometimes followed children over to the father's house, which was on the second farm. Further, the father brought scraps to feed the dogs at a machine shop on the third farm, where the child was bitten. *Godsey,* 1992 WL 48532, at *1-2 (6th Dist.). During his deposition, the father said that "he never voiced any objection concerning any of the dogs that his son had and 'It was all right with me. I think it's kind of nice to have a dog around.' " *Id.* at *2.

{¶ 41} After noting the elements of possession, control, and silent acquiescence, the court stressed in *Godsey* that " '[a]cquiescence' is essential to 'harborship,' and requires some intent." *Id.* at *3, citing *Bundy v. Sky Meadows Trailer Park*, 1989 WL 125379, *4 (12th Dist. Oct. 23, 1989). The court rejected the claim of the father (and his wife) that they were merely "landlords" for their son, and it found factual issues about whether they were liable as harborers. While conceding that the majority of harboring cases involved situations where a dog was present in a harborer's home or where the dog bite took place at the harborer's home, the court concluded "the premises can include

a backyard, outbuildings or a farm." *Id*. at *4.

{¶ 42} The court then said:

> In this case appellees contend that they were merely "landlords" and, therefore, did not possess or control Daryl and Jean's premises. This contention begs the issue. Whether a landlord is liable as a harborer for damage or injury inflicted by a tenant's dog depends upon whether the landlord permitted or acquiesced in the tenant's dog being kept in common areas or in an area shared by both the landlord and tenant. If the tenant's dog is confined only to the tenant's premises, the landlord cannot be said to have possession and control of the premises on which the dog is kept. If the dog gets loose and roams onto common areas without the landlord's permission, the landlord cannot be said to have acquiesced. *Further, if the landlord has established rules for the maintenance of pets by his tenants, such rules militate against the finding of acquiescence.* On the other hand, where the landlord acquiesces in the keeping of the tenant's dog in common or joint areas, by allowing it to use or roam freely over such areas, the two elements of acquiescence and possession and control are present, and the landlord may be held liable as a harborer for damages or injury caused by that dog. . . . The elements to be proved in a claim against the landlord as a harborer of a dog are, therefore, the same as in a claim against other harborers of dogs, and liability is not defeated merely by virtue of the status of landlord.

(Emphasis added.)   *Godsey* at *4.

{¶ 43} In *Bundy*, the court reversed a summary judgment granted to a trailer park on common law negligence claims, finding a "special relation" because the park knew "of the dog's vicious propensities, and promulgated rules prohibiting animals from 'running at large.' "   *Bundy*, 1989 WL 125379, at *3 (12th Dist.).   That issue was not present here.

{¶ 44} In *Bundy*, the court affirmed summary judgment for the park on strict liability, however, stating "failure to properly enforce park rules does not constitute harboring an animal since the requisite mental intent is lacking.   Further, establishing trailer park rules for the maintenance of animals or pets by one's tenants or residents, does not make one an 'owner, keeper or harborer of a dog.' "   *Id*. at *4, citing *Garrard*, 5 Ohio App.3d at 182 (10th Dist.).   In fact, as the cases illustrate, establishing rules militates against finding acquiescence.

{¶ 45} Similarly, in *Root v. Thousand Adventures of Ohio, Inc.*, 1997 WL 164313 (9th Dist. Apr. 2, 1997), the court of appeals affirmed a summary judgment granted to a campsite owner.   In that case, the owner operated a campground in which patrons could stay for a maximum of 21 days in portable trailers or mobile homes.   The owner allowed pets to be removed from individual campsites if they were on a leash.   *Id*. at *3.   The court commented that "[a] person is not a harborer, however, even if he acquiesces to a dog's presence on property over which he has possession and control, if the dog does not regularly live at that property."   *Id*. at *2, citing *Rucker v. Taylor*, 1993 WL 289912, *2 (5th Dist. July 12, 1993).   In *Rucker,* a dog bit someone during a visit to a veterinarian's office.   The court found the veterinarian was not a harborer because the dog was briefly

there for a shot and there was no evidence "the dog ever made his home or lived at the clinic." *Id.*

{¶ 46} Likewise, in another case, the court of appeals affirmed a summary judgment in favor of trailer park owners, noting that there was no evidence they "permitted or acquiesced in the dog running loose" (which the dog was doing when it attacked a child who was riding his bicycle). *Thompson v. Irwin*, 1997 WL 666079, *4 (12th Dist. Oct. 27, 1997). The court stated that the owners' involvement with the dog was not sufficient enough for them to be considered harborers. *Id.*

{¶ 47} Even if courts do not explicitly say so (perhaps because it is obvious), these results are based on common sense recognition of differences between where a dog routinely lives and where a dog may temporarily be, like a campground, a shop, or an office. The same logic applies where landlords allow tenants to have dogs but have regulations (as here). Dogs do not "live" at a veterinarian's office, nor do they "live" in common areas of leased property. In both cases, dogs are present intermittently and for a brief time. Courts may phrase the latter situation in terms of whether the landowner has "silently acquiesced" (where the intent to do so is not contradicted by the presence of rules) rather than stating that a dog does not regularly "live" in the common area. However, all these situations are based on similar logic and considerations.

{¶ 48} This point is reinforced by the fact that an "intent" element is required, which is not applied in other dog-bite situations. Landlords like Sun, just like others who own property where animals are temporarily present, are not insurers and should not be placed in that position. Otherwise, as *Gilbert* noted, persons who have dogs would not

be able to find places to live. *Gilbert*, 259 N.W.2d at 898. This is not to say that a landlord or lessor can never be held liable for injuries in common areas. However, where, as here, the landlord adopts rules governing pets, that militates against a finding of acquiescence.

{¶ 49} I have reviewed every case in Ohio citing R.C. 955.28, and many that cite its predecessor statutes. The vast majority of harboring cases do not involve common areas. They involve these kinds of dog bites: in yards of single-family homes where an alleged harborer is out of possession; inside leased premises; in situations where roommates or family members happen to live together with a dog or live in adjacent properties and take care of a dog; and in instances where family members rent property to other related individuals. *E.g., Padgett v. Sneed*, 1995 WL 421864, *1-2 (1st Dist. July 19, 1995) (father lived next door to daughter and borrowed her dog to guard his house; appellate court found jury issues as to whether he was keeper or harborer); *Stuper v. Young*, 2002-Ohio-2327, ¶ 2-3 and 17 (9th Dist.) (grandmother owned dog owner's (grandson's) home and the bar next door, and a dog bite occurred in the bar parking lot; summary judgment for grandmother was affirmed due to lack of evidence she knew of the dog's roaming loose or acquiesced in dog's presence); *Engwert-Loyd v. Ramirez*, 2006-Ohio-5468, ¶ 2-3, 9, and 10 (6th Dist.) (owner leased single-family property to sister and brother-in-law and let them keep a dog, where a bite occurred in the back yard; owner was not liable as a harborer because lease transferred possession and control); *Kovacks v. Lewis*, 2010-Ohio-3230, ¶ 3, 6, and 34 (5th Dist.) (parents purchased home for daughter and her husband until they could obtain financing and knew daughter had dog;

mother co-signed for dog's purchase but said she did not own it; parents were not harborers and were not in possession or control of premises when dog bite occurred); *Jones v. Holmes*, 2013-Ohio-448, ¶ 12 and 19 (12th Dist.) (dog belonged to another and was temporarily in home overnight, and there was no evidence the dog made its home there or lived there; resident of home was not harborer); *Dilgard v. McKinniss*, 2024-Ohio-1106, ¶ 14, and 16-22 (3d Dist.) (grandparents owned house where grandson lived; he did not pay rent but maintained the house and paid utilities. Grandparents knew he had a dog and did not tell him to remove it. The court stated that "the mere fact that the landlord has control over whether a dog is allowed to live on the premises with its owners is not sufficient to transform a landlord into a harborer.")

{¶ 50} This is only a brief sampling of cases, as there are hundreds. In contrast, few Ohio cases involve liability for landlords as harborers in common areas. The scarcity of such cases in well over 100 years since strict liability laws were passed supports the common sense approach I have discussed. In addition, interpretations of the meaning and application of "harboring" have not always been consistent.

{¶ 51} In arguing that summary judgment was improper (or that factual issues exist), Hipshire states that the mere presence of a single restriction (of dog breed) does not mean, as a matter of law, that Sun cannot be a harborer. Hipshire Brief at p. 9 and fn. 2, 14, and 19. Contrary to Hipshire's claim, there was evidence of more than one restriction. In fact, Hipshire herself said that Sun required pets to be on a leash. Hipshire Deposition 6, 7, 12-13, and 14. Again, this restriction showed intent that contradicted acquiescence. Hipshire also contends Sun should have prohibited dogs

from being at the playground and should have required muzzles or that dogs be kept on handheld leashes controlled by adults. Hipshire Brief at p. 17. By making the latter suggestion, Hipshire appears to impliedly admit that Sun, in fact, required dogs to be leashed. At the same time, she attempts to minimize the rule or vitiate its effect because the person accompanying the dog in this case happened to be a child. In any event, I disagree. No matter what "rule" is imposed, someone will argue that another approach would be better. However, this not a negligence case, and landlords do not have to impose such detailed rules to avoid acquiescence.

{¶ 52} One might construe the law to be such that, because Sun allowed certain dogs in the common area if leashed, and the dog was leashed in the common area, Sun had acquiesced to the dog's being at the common-area playground and was therefore a harborer. However, none of the cases connected a specific regulation to the particular circumstances of a dog-bite; the intent issue involved a more general application. As noted, the cases are few, and none involves the specific circumstances here. Whether Lake's dog was leashed as required at the time of the bite is not the point. If that were the case, landlords who require dogs to be leashed would still be liable if the dog later escaped the leash in the common area and bit someone. After all, the dog was initially leashed as required and was in the common area. Thus, the landlord "acquiesced" to the dog's being there. However, in such a situation, courts have said that "the landlord cannot be said to have acquiesced." *Godsey*, 1992 WL 48532, at *4 (6th Dist.).

{¶ 53} From a logical perspective, a more general assessment of intent makes sense. First of all, requiring landlords to address every possibility is unworkable. Under

this scenario, landlords could avoid liability only if they restricted dogs from being in all common areas. For example, assume that Sun chose to prohibit dogs from being in the playground area but did not include all other common areas or list all other common areas specifically. In that situation, Sun would be liable if the dog were one foot away from the playground, on a common-area sidewalk, but would not be liable if the person walking the dog unintentionally veered one foot onto the playground. Furthermore, if such comprehensive restrictions were required, dog owners would not be able to find a place to rent.

{¶ 54} Given the required strict construction of R.C. 955.28, the historical definitions of "harborer" (as equated with "keeper"), and the fact that courts have included an intent requirement in certain instances, I cannot agree with the majority's position - which is that property owners are liable simply because an injury occurs in a common area. Accordingly, in my view, under the circumstances here, the trial court did not err in granting summary judgment to Sun or in denying Hipshire's summary judgment motion. I therefore very respectfully dissent and would affirm the trial court judgment.